Norbert HOHLBEIN, James R. Beckey, Winston L. Howell, and Edward White, Plaintiffs,

v.

HERITAGE MUTUAL INSURANCE COMPANY, a Wisconsin corporation, Defendant.

No. 85–C–0157.

United States District Court, E.D. Wisconsin.

May 20, 1985.

Bruce M. Davey and James W. Gardner, Madison, Wis., for plaintiffs.

Kalvin M. Grove and Steven L. Gillman, Chicago, Ill., and Carroll Metzner, Madison, Wis., for defendant.

## MEMORANDUM AND ORDER

WARREN, District Judge.

### BACKGROUND

This action was initiated on January 31, 1985, when the plaintiffs, all individual residents of states other than Wisconsin, filed their complaint against the corporate defendant, which maintains its principal office in Sheboygan, Wisconsin. Invoking the Court's diversity jurisdiction as established under 28 U.S.C. § 1332(a)(1), the plaintiffs aver that the amount in controversy exceeds the sum or value of $10,-000.00, exclusive of interest and costs, and is between citizens of different states.

Although the complaint is framed in twelve discrete counts, each of the four individual plaintiffs articulates three, independent causes of action under parallel theories of false or reckless misrepresentation, fraud, and breach of promise. The factual basis common to the claims of all four plaintiffs is that each was purportedly contacted and interviewed by the defendant's representatives in connection with executive employment positions; that the defendant made material misrepresentations of

fact and failed to disclose other material information with respect to those executive positions during the course of the respective interviews; and, specifically, that the plaintiffs were not advised that their employment with the corporate defendant would be subject to a probationary period.

At the same time, the particular circumstances under which each of the four plaintiffs was allegedly misled to his damage are unmistakably different. Plaintiff Norbert Hohlbein was purportedly interviewed by the defendant's representatives on various occasions in February of 1982 for the position of Vice President of Sales. Despite its apparent initial decision not to fill that position, the defendant allegedly renewed negotiations with this plaintiff from October through December of 1982, during which it made material misrepresentations of fact with respect to, among other things, the present performance of the duties of the Vice President of Sales; the nature and scope of the authority vested in the individual hired to fill that position; its intention regarding the promotion of that employee to the President's post; and the financial assistance to be provided to the prospective employee to facilitate his relocation to the State of Wisconsin—all representations made knowingly or with reckless disregard for the truth, or so the complaint charges. This plaintiff further claims that the defendant failed to disclose that his employment would be subject to a period of probation during which he could presumably be terminated at will—a failure of disclosure purposely undertaken to induce the plaintiff to accept the job offer.

Although this plaintiff apparently began his employment with the defendant on December 6, 1982, he resigned some two months later, on February 10, 1983, principally because he "was not given the duties and authority the defendant represented he would have and ... was not provided the relocation assistance defendant represented would be provided...." Plaintiffs' *Complaint* at 5 (January 31, 1985). Based on these claims, this plaintiff seeks $211,-634.00 in actual damages, together with punitive damages in an amount not less than five times that sum.

By his discrete claims in the complaint, plaintiff Winston Howell states that he, too, was interviewed by the defendant for the position of Vice President of Sales, although on various occasions in April of 1981. During the course of those negotiations, the defendant's representatives allegedly made material misrepresentations with respect to both the authority and responsibility attendant upon the sales position and the corporation's expectations for the promotion and future responsibilities of the individual selected to fill that spot. This plaintiff claims that, in reliance on the defendant's representations, he began his employment on or about June 1, 1981, only to terminate some two months later, on or about August 6, 1981, upon discovering that the duties and authority of the sales vice presidency were not as the defendant's representatives had stated.

Like all of his co-plaintiffs, this party claims to have "sustained substantial damages ... including but not limited to, loss of income, loss of future income, damage to his professional reputation, inconvenience, and emotional distress" all as direct and proximate result of the defendant's material misrepresentations and omissions. Plaintiffs' *Complaint* at 13 (January 31, 1985). Pursuant to his three counts of false or reckless misrepresentation, fraud, and breach of promise, he seeks actual damages in the amount of $104,070.00 and punitive damages totaling a sum not less than five times that figure.

Plaintiff James R. Beckey alleges that he applied for the position of Regional Claims Manager for the defendant and was interviewed for that job on various occasions in August and September of 1983. The material misrepresentations purportedly made to him during the course of his discussions with the defendant's representatives included certain guarantees with respect to the manager's responsibilities for overall claims administration and a promise that he would be paid temporary living expenses during the period of his relocation to Wis-

consin. Like the others, he also charges that he was not notified that the conditions of his employment included an initial, probationary period.

Relying on the defendant's material misrepresentations and omissions, this plaintiff purportedly accepted the employment offer on or about October 3, 1983, and was thereafter advised that he would not be provided with the temporary living and pre-employment interview expenses to the extent previously indicated. He also charges that he was not accorded the duties and responsibilities of the position as described to him during the course of employment negotiations. Characterizing the defendant's material misrepresentations and omissions as willful, malicious, and in complete disregard for his rights, this plaintiff seeks actual damages totaling $102,500.00, together with punitive damages in a sum not less than five times that amount.

Finally, it is the principal allegation of plaintiff Edward White that he, too, was materially misled during interviews with the defendant, in his case, for the position of Training and Educational Specialist, conducted in the month of March of 1982. Among other things, those material misrepresentations allegedly included a promise that he would be responsible for supervising all of the defendant corporation's training activities when it moved to a new home office. Paralleling the charges of his co-plaintiffs, this party avers that his reliance on the defendant's various promises and concomitant failure to disclose the probationary nature of the employment relationship led him to accept the offered position in June of 1982. However, upon his entry of service, he was purportedly not given the position of Training Manager but was instead terminated some three months later, in September of 1982.

As a direct and proximate result of the defendant's material misrepresentations and omissions regarding the job, this plaintiff claims to have suffered damages, including losses attendant upon his move and sale of his previous home in New York, all in the amount of $143,750.00. In addition, he seeks punitive damages totaling not less than five times that figure. Collectively, the four plaintiffs also request the costs and disbursements of prosecuting this case and such other relief as the Court deems just and equitable.

By its answer of March 13, 1985, the defendant admits several of the principal jurisdictional and factual averments in the complaint but denies all material allegations of false or reckless misrepresentation, fraud, and breach of promise with respect to its employment of any of the four plaintiffs. Pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, the defendant also raises some twelve affirmative defenses—among them, that the discrete claims grounded in promissory estoppel and breach of contract are barred since no employment promises were made, since the employment of each of the plaintiffs was terminable at will, and since any employment agreements were wholly unsupported by sufficient consideration and were violative of the Statute of Frauds. In addition, the defendant affirmatively alleges with respect to the charges of misrepresentation and fraud that all of its statements to the plaintiffs were true or reasonably believed to be true when made and, in any event, that their reliance on those representations was not reasonable.

The defendant further avers that each of the plaintiffs' claims are barred under the equitable doctrines of laches, estoppel, and waiver and as a result of their failure to mitigate damages. Finally, it affirmatively alleges that, to the extent that the plaintiffs seek recovery for alleged mental distress or anguish, their claim is barred under the Wisconsin Worker's Compensation Statute and that their complaint as a whole fails to state a claim upon which relief can be granted. Based on the general denials in its answer and these several affirmative defenses, the defendant seeks dismissal of the complaint in its entirety, along with those costs and attorneys' fees attendant upon the defense of this lawsuit.

Presently before the Court is the motion of the defendant, pursuant to Rule 20(a)

and Rule 21 of the Federal Rules of Civil Procedure, to sever this action into four discrete lawsuits, one by each party-plaintiff. In support of its petition, the defendant recites the factual averments upon which the complaint is premised and concludes that none of the four plaintiffs' claims arise "out of the same transaction, occurrence, or series of transactions or occurrences," as prescribed by Rule 20(a). It also suggests, in the language of Rule 20(a) that there is no "question of law or fact common to all of these persons," as follows:

... [N]one of the Plaintiffs were concurrently employed by Defendant. Moreover, with the exception of the Plaintiffs Hohlbein and Howell, both of whom served as Vice President of Sales, the positions held by the Plaintiffs were highly dissimilar. Indeed, it is manifest from Plaintiffs' Complaint that the only common aspect of these four men's lives is that each was employed, albeit briefly, by the Defendant.... [T]hat commonality is not sufficient to allow these four individuals to ban together as plaintiffs in a single action against Defendant.

... Plaintiffs have not alleged any common transactions or occurrences which touch upon their separate claims. Instead, the only commonalities of Plaintiffs' claims are the legal theories upon which they allege a right to recovery, and the fact that all are proceeding against the same defendant. These commonalities, however, are wholly insufficient to support joinder.

Defendant's *Memorandum in Support of Motion to Sever* at 3 & 5 (March 22, 1985).

Invoking relevant authority on the circumstances under which joinder and severance are proper under Rule 20(a) and Rule 21, respectively, the movant also suggests that no legitimate interest in the promotion of judicial economy would be served if the action is prosecuted in its present form and, in fact, that the considerable likelihood of jury confusion strongly underscores the impropriety of trying the plaintiffs' discrete claims in one, consolidated proceeding.

Predictably, the plaintiffs take strong exception to the defendant's assertion that there does not exist sufficient commonality to permit consolidation of all of their claims in one action. The plaintiffs direct the Court's attention to these factual similarities between their discrete claims:

Each of the plaintiffs are insurance executives. Each of the plaintiffs was contacted and interviewed by representatives of Defendant in connection with executive positions with the defendant company. Each of the plaintiffs allege that in connection with their interview and offers of employment representatives of the defendant made material misrepresentations of fact to each plaintiff and failed to disclose material facts to the plaintiffs; more specifically, each of the plaintiffs allege that notwithstanding the representations made by the representatives of defendant, the plaintiffs were not told that their employment with defendant company would be subject to a probationary period during which the defendant would determine whether the plaintiff was indeed the individual the defendant wished to employ.

Plaintiffs' *Memorandum in Opposition to Motion to Sever* at 1–2 (April 5, 1985).

Admitting to some factual dissimilarities between their discrete causes of action, the plaintiffs nonetheless maintain that the defendant-employer's treatment of each of them constitutes a "course of conduct" and an "on-going policy of material misrepresentations and fraud." Plaintiffs' *Memorandum in Opposition to Motion to Sever* at 2 (April 5, 1985). In further support of this position, the plaintiffs discuss numerous cases, principally in the area of employment discrimination, in which federal trial courts have ruled that the joinder of claims is appropriate, notwithstanding certain individual peculiarities of the plaintiffs' factual averments. Where, as here, the discrete causes of action all spring from a consistent pattern or practice of employment behavior on the part of a single defendant, the action is properly prosecuted and de-

fended in a consolidated format, or so the plaintiffs conclude.

As demonstrated by the Court's discussion of this pending matter, it has carefully reviewed the plaintiffs' complaint and has considered at some length the opposing arguments articulated by the parties in support of and in opposition to the present motion. Although the Court opines that the question is a close one, it concludes, for the reasons set forth below, that the motion to sever the plaintiffs' claims should be denied.

### RULE 20(a), RULE 21, AND THE DEFENDANT'S MOTION TO SEVER

■ As the parties to this action recognize, Rule 20(a) of the Federal Rules of Civil Procedure plainly establishes the right of all persons to "join in one action as plaintiffs if they assert any right to relief jointly, severely, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action." The unmistakable purpose for the Rule is to promote trial convenience through the avoidance of multiple lawsuits, extra expense to the parties, and loss of time to the Court and the litigants appearing before it. *Anderson v. Frances I. duPont & Company*, 291 F.Supp. 705, 711 (D.Minn.1968). Indeed, it is generally held that Rule 20(a) should be liberally interpreted and applied in practice when consistent with convenience in the disposition of litigation. *Kerr v. Enoch Pratt Free Library of Baltimore City*, 54 F.Supp. 514, 516 (D.Md.1944), *reversed on other grounds*, 149 F.2d 212 (4th Cir.), *cert. denied*, 326 U.S. 721, 66 S.Ct. 26, 90 L.Ed. 427 (1946).

■ The Rule regarding permissive joinder of parties is wholly procedural in nature and does not create nor alter the substantive rights of the parties. *Fitch v. Firestone*, 173 F.Supp. 131, 133 (D.R.I. 1969). At the same time, there are two fundamental prerequisites for joinder under Rule 20(a)—namely, that the right to relief be asserted by each plaintiff relating to or arising out of the same transaction or occurrence or series of transactions or occurrences and that some question of law or fact common to all of the parties arise in the action. *Mosley v. General Motors Corporation*, 497 F.2d 1330, 1333 (8th Cir. 1974).

■ As the present movant accurately notes, the remedy for improper joinder is prescribed by Rule 21 of the Federal Rules of Civil Procedure, plainly establishing that "[a]ny claim against a party may be severed and proceeded with separately." Under this provision of the Rule, the determination of a motion to sever is committed to the broad discretion of the trial judge. *Bolling v. Mississippi Paper Company*, 86 F.R.D. 6, 8 (N.D.Miss.1979). In fact, the powers of the trial court to sever unrelated claims and afford them separate treatment when to do so would promote the legitimate interests of some of the parties is well established. *American Fidelity Fire Insurance Company v. Construcciones Werl, Inc.*, 407 F.Supp. 164, 190 (D.V.I. 1975). The practical effect of severance of previously-joined claims is the creation of two or more separate actions. *Hess v. Gray*, 85 F.R.D. 15, 22 (N.D.Ill.1979).

■ Applying these general standards to the circumstances of the present lawsuit, the Court opines that resolution of the parties' various claims would best be promoted if the action is litigated as it is now fashioned. Admittedly, there are several, material dissimilarities between the substantive allegations of the four plaintiffs; most notably, each was employed by the defendant at a different time and—with the exception of plaintiffs Hohlbein and Howell—occupied different positions in its corporate structure. Moreover, each accepted the defendant's employment offer based on discrete application and interview processes; subsequently, each was terminated—either voluntarily or involuntarily—at a different time and for what appears to be a different reason.

Nonetheless, the Court finds persuasive the plaintiffs' characterization of the de-

fendant's actions as demonstrative of a continuing pattern or practice with respect to its employment of admittedly unrelated individuals. All of the developments upon which this consolidated action is premised took place within a two and one-half year period between April of 1981, when plaintiff Howell first interviewed for the position of Vice President of Sales, and October of 1983, when plaintiff Beckey accepted employment for what he thought would be the position of Regional Claims Manager. The particular circumstances under which each of the four plaintiffs interviewed for, began, and ultimately terminated employment with the defendant are, in the Court's view, sufficiently similar to overcome the peculiar temporal and factual dissimilarities that might otherwise justify severance.

Furthermore, each plaintiff alleges that the defendant's representatives failed to disclose the employer's policy requiring any newly-hired executive to complete a probationary period. The Court also notes that all plaintiffs claim to have sustained similar damages, including, in at least three cases, those losses attendant upon relocation to the State of Wisconsin. All of these factors together convince the Court that the present complaint does, indeed, arise out of the same series of transactions or occurrences and implicates questions of law or fact common to each of the named plaintiffs. The Court finds some precedential support for this conclusion in the authority advanced by the plaintiffs in opposition to the pending severance request. *See, e.g., King v. Ralston Purina Company,* 97 F.R.D. 477, 480–81 (W.D.N.C.1983) (finding that, although the three plaintiffs worked in different places and in different divisions of the defendant company, their actions against that employer could be joined together in a single action where they each alleged a company-wide policy of age discrimination); *Mosley v. General Motors Corporation,* 497 F.2d 1330, 1333–34 (8th Cir.1974) (reversing trial court's severance order upon a finding that each of the ten plaintiffs had alleged like injuries as a result of the defendant-employer's purported policy of racial discrimination).

Finally, the Court feels strongly that any burden imposed upon the defendant in the consolidated trial of each of the plaintiffs' causes of action is far outweighed by the practical benefits likely to accrue to all players in the conservation of judicial, prosecutorial, and defensive resources. Likewise, the Court is unable to conclude, at this stage in the proceedings, that the specter of jury confusion is sufficiently ominous to justify wholesale severance of this matter into four, discrete lawsuits. As the case proceeds toward trial, the Court may find it appropriate to enter such pretrial orders as necessary to ensure that the several claims of the plaintiffs are presented to the jury in the clearest and most evenhanded manner possible; to the extent that the Court shares with the parties this interest in developing an unobscure and transparent trial record, it will surely enlist the assistance of counsel in identifying the litigable issues and sharpening the presentations of their respective positions.

For the present, however, the Court simply cannot conclude that the interests of justice would be disserved if the action is permitted to proceed in its consolidated form. Rather, for the reasons stated above, the Court finds that severance of this matter into four, separate causes of action would, in the end, prove both unjustified and unwise. Accordingly, it will deny the defendant's motion for severance.

## CONCLUSION

For the reasons set forth herein, the Court hereby DENIES the defendant's motion to sever the claims of the four plaintiffs in this action, pursuant to Rule 20(a) and Rule 21 of the Federal Rules of Civil Procedure.

In order to ensure that the prosecution and defense of this action now proceed apace, the Court will conduct a status conference at *9:00 a.m., on Friday, July 26, 1985.* Counsel for the parties are instructed to come to that hearing fully prepared to discuss the further litigation of this matter, including, as appropriate, their inten-

tions for the pursuit of discovery, their plans for the filing of any pretrial dispositive motions, and their expectations for the trial of this case.