In re David Charles CONNERS, Debtor.

CITIBANK (SOUTH DAKOTA), a National Association, FCC National Bank, a National Association, USAA Credit Card Bank, a National Association and Crestar Bank, a National Association, Plaintiffs,

v.

David Charles CONNERS, Defendant.

Bankruptcy No. 90–05190–H7.
Adv. No. 90–90486–H7.

United States Bankruptcy Court,
S.D. California.

April 2, 1991.

Karen A. Ragland, Ferns & Ferns, Glendale, Cal., for plaintiffs.

David L. Buchbinder, David L. Buchbinder & Associates, San Diego, Cal., for defendant.

MEMORANDUM DECISION

JOHN J. HARGROVE, Bankruptcy Judge.

At issue is whether there has been a misjoinder of claims due to the improper joinder of multiple plaintiffs and whether

pursuant to Bankruptcy Rule 7021 this court, in its discretion and in the interest of effective judicial administration, may sever and proceed separately with the misjoined claims.

This court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334 and § 157(b)(1) and General Order No. 312–D of the United States District Court, Southern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

## FACTS

Debtor David Charles Conners ("debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code on June 22, 1990.

On September 24, 1990, the law firm of Ferns & Ferns filed a single complaint on behalf of its clients Citibank (South Dakota) ("Citibank"), FCC National Bank ("FCC"), USAA Credit Card Bank ("USAA"), and Crestar Bank ("Crestar") to determine non-dischargeability of debt and for entry of judgment for money. The complaint alleges five separate claims for relief, with each of the plaintiffs pursuing independent claims.

The only factual basis common to the claims of all four plaintiffs is that each plaintiff issued a separate credit card to the debtor, and the debtor obtained a total of $12,400 in cash advances from the various plaintiffs from the period of May 8, 1990 to May 14, 1990 [1]. All of the advances were made within the ninety day period prior to the filing of the bankruptcy petition.

However, the claims seek to declare non-dischargeable more than the cash advances during May 1990. Each of the claims makes the same allegations regarding the debtor's inability to pay, false pretenses and false representations. Each of the plaintiffs allege that its debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) on the grounds that if it had known that debtor would purposely, or with gross indifference and recklessness,

violate the terms and conditions of the charge card agreement, it would not have approved the charge card purchases or cash advances.

Citibank, in its first claim alleges that debtor "in contemplation of filing this case and without intention of paying therefor, between March 22, 1990 and April 27, 1990 made purchases in the total amount of $5,812.16 within ninety (90) days prior to the filing of the Bankruptcy" using Mastercard account number 5424–1802–0116–1640. Citibank further contends that the debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) on the grounds that no payments were received on said purchases; and within 90 days of filing the bankruptcy, the Mastercard was used to purchase consumable items and items that might be sought to be exempt by debtor.

In its second claim, Citibank alleges that debtor used a VISA card, account number 4271–3820–0200–2612, to incur obligations in the sum of $7,921.03. Citibank also alleges that apparently a portion of this amount was a "cash advance in the amount of $1,500 obtained on May 10, 1990 within forty-four (44) days prior to the filing of the Bankruptcy." Citibank further contends that the debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) on the grounds that no payments were received on said cash advance.

FCC alleges in its claim that debtor in contemplation of bankruptcy and without intention of paying therefor used a credit card, account number 8125–035–381–174 under the Executive Credit Program, to incur obligations in the sum of $3,025.91, including a "cash advance in the amount of $2,950 on May 8, 1990 within forty-six (46) days prior to the filing of the bankruptcy."

USAA alleges in its claim that debtor in contemplation of bankruptcy and without intention of paying therefor used a VISA card and Mastercard, account numbers 4121–8500–0113–6906 and 5416–3000–0113–6903, to incur obligations in the sum of

---

**1.** Debtor also allegedly made charge card purchases at times other than when the cash advances were made during this one week period.

$13,501.58, including on May 8, 1990 a "cash advance of $6,950 within forty-six (46) days prior to the filing of the Bankruptcy." USAA further contends that the debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) on the grounds that the debtor exceeded his credit limit without express authorization from USAA.

In its claim, Crestar alleges that debtor in contemplation of bankruptcy and without intention of paying used a VISA card, account number 4366–9800–0000–2223, to incur obligations in the sum of $5,103, including a "cash advance in the amount of $1,000 on May 14, 1990 within forty (40) days prior to the filing of the Bankruptcy." Crestar further contends that the debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) on the grounds that no payments were received on said purchases.

Debtor filed his answer on October 16, 1990, and the matter was set for a pre-trial status conference. Thereafter, an order to show cause was issued by the court on December 6, 1990.

At the hearing on this court's order to show why the adversary proceeding should not be dismissed for improper joinder of multiple plaintiffs, plaintiffs' counsel stated that the complaint represented part of the "VISA Bankruptcy Reduction Program" in which VISA apparently has decided to pool together various banks servicing VISA cards and join them into one lawsuit against the debtor defendants even though each claim for relief may involve a different credit card and different facts.

## DISCUSSION

Bankruptcy Rule ("B.R.") 7021, which incorporates Federal Rule of Civil Procedure Rule 21, states that:

> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

In order to determine whether misjoinder has occurred, the court must look at the rules regarding joinder.

Bankruptcy Rule 7020, which incorporates Federal Rule of Civil Procedure Rule 20, governs permissive joinder of parties. B.R. 7020(a) states in pertinent part that:

> All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.

However, B.R. 7020(b) provides that:

> The court may make such orders as will prevent a party from being embarrassed, delayed, or put to expense by the inclusion of a party against whom the party asserts no claim and who asserts no claim against the party, and may order separate trials or make other orders to prevent delay or prejudice.

Joinder is at the option of the plaintiff and is subject to the discretion of the court under Rule 20(b). *Trahan v. Southern Pac. Co.*, 209 F.Supp. 334 (W.D. La.1962). The purpose behind Rule 20 is to promote trial convenience through the avoidance of multiple lawsuits, extra expense to the parties, and loss of time to the court and the litigants appearing before it. *Anderson v. Frances I. duPont & Company*, 291 F.Supp. 705, 711 (D.Minn.1968). This must be contrasted with Rule 21 which gives the court the power to sever and proceed separately with misjoined claims in its discretion and in the interest of effective judicial administration. 3A J. Moore, *Moore's Federal Practice* ¶ 21.03[1] at 21–6 (2d ed. 1986). The reach of Rule 21 has been extended to include cases in which unitary adjudication of the claims would result in unfairness that would not be obviated by an order for separate trials. It allows the court, in its discretion, to determine whether the benefits of consolidation will outweigh the prejudice to the individual parties. *See Garber v. Randell*, 477 F.2d 711 (2nd Cir.1973); 3A J. Moore,

**614**

*Moore's Federal Practice* ¶ 21.05[2] at 21–45 (2d ed. 1986).

■ Rule 20(a) contemplates two tests for joinder: 1) the occurrence of some question of fact or law common to all parties; and 2) the existence of a right to relief predicated upon or arising out of a single transaction or occurrence or series thereof. Both tests must be satisfied if joinder is to be permitted. *Mesa Computer Util., Inc. v. Western Un. Comp. Util., Inc.*, 67 F.R.D. 634 (D.Del.1975). However, since the legal and factual issues to be determined will differ in some respects from one plaintiff to the next, Rule 20(a) does not require precise congruence of all factual and legal issues. Joinder may be permissible if there is but one question of law or fact common to the parties. *Id.* at 637.

■ Only one of these tests is met in this case. Although the nature of the alleged fraud to each plaintiff was much the same, and that may allegedly reflect a pattern of conduct by defendant, nothing in the complaint even hints at any linkage between the plaintiffs or between the making of the separate transactions with each. Further, while the alleged fraudulent scheme may have been the same as to all plaintiffs, the use of credit cards issued by different banks, as contrasted with for example a securities prospectus misrepresentation, necessarily requires individualized proof. Such a requirement vitiates any benefit from joinder.

In Rule 20(a) terms, the credit charges certainly did not involve the same transaction or occurrence. Neither did the use of the charge cards present the same series of transactions or occurrences. Different cards were used involving different banks. As stated in *Papagiannis v. Pontikis*, 108 F.R.D. 177 (D.N.D.Ill.1985), this:

> [C]haracterization [as the same series of transactions or occurrences] does not fairly apply to two victims' wholly separate encounters with a confidence man simply because he follows the same routine in cheating each of them. It is as though two persons who fall, wholly independently, for the classic "pigeon drop" swindle two weeks apart were to characterize those swindles as the "same ... series of transactions or occurrences." [footnote 4 included]

Joinder of these claims would not satisfy the Rule 20(a) goal of permitting all reasonably related claims for relief by different parties to be tried in a single proceeding. Further, it is the apparent unfairness in allowing four creditors to "gang up on" the debtor which convinces this court to order four separate adversary proceedings to be formed out of this case.

A great number of the cases allowing joinder involve relatively poor individual plaintiffs filing suit against a wealthy corporation. The economic disparity between the parties is such that it is highly unlikely that an individual plaintiff would have the resources to pursue a claim in the absence of joinder. *Cf. Hohlbein v. Heritage Mut. Ins. Co.*, 106 F.R.D. 73 (E.D.Wis.1985).

Here, we are faced with four national banking institutions with sufficient resources to each bring their own complaint, but holding relatively small claims. It may very well be that the economics of these cases if individually filed would cause the plaintiffs not to pursue these claims. The economic rationale for allowing the joinder of parties is missing in this case.

Further, allowing these creditors to join into one complaint may very well impair the debtor's right to a fresh start. As discussed in *In re Hanson*, 104 B.R. 261, 262 (Bankr.N.D.Cal.1989), the court must consider the policy of affording the debtor a reasonable opportunity for a fresh start:

> While it is generally stated that bankruptcy is not supposed to be a haven for the dishonest debtor, there are in fact conflicting policies behind the Bankruptcy Code. One policy is clearly to keep dishonest persons from escaping civil liability for their dishonest acts; sections 523(a)(2), (4) and (6) are designed to prevent that. However, another strong policy is the desire to give debtors a fresh start. Where a debtor has given up all his [or her] nonexempt assets, huge nondischargeable judgments may well bene-

fit nobody. The creditors may throw good money after bad pursuing a judgment which may never be collectible, and the judgments may keep a reformed debtor from starting over again and becoming a productive member of society.

Congress has instituted very strict procedures in connection with dischargeability proceedings in order to protect a debtor's fresh start. Allowing joinder in the present case tends to dilute this protection by making it easier for more creditors to file dischargeability actions.

Finally, the United States Court system is being deprived of filing fee revenues. Had each plaintiff filed separate complaints, the bankruptcy clerk would have received $480.00. Instead only $120.00 was received, yet this court and its courtroom staff must hear and process what amounts to be four separate cases tried at one time.

### CONCLUSION

■ By virtue of the discretion granted this court by Bankruptcy Rule 7021, and after balancing the factors of benefit and prejudice that will result from the alternative courses, this adversary proceeding is hereby severed into four separate adversary proceedings in order to prevent prejudice to the debtor's ability to receive a fresh start. The claims of FCC, USAA, and Crestar are severed and will be heard as separate adversary proceedings. Plaintiffs are also directed to pay to the Clerk of the Court the appropriate filing fee. Copies of the pleadings contained in the original complaint may be used in the severed adversary proceedings.

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.