Vincent INSOLIA and Karen Insolia, Billy Mays and Phyllis Mays, Maureen Lovejoy and Lee Lovejoy, on behalf of themselves and as representatives of a class of all others similarly situated, Physicians Plus Insurance Corporation, Wal–Mart Group Associates, Insurance, Champus, parties joined pursuant to Wis.Stat. sec. 803.03, Plaintiffs,

v.

PHILIP MORRIS INCORPORATED; R.J. Reynolds Tobacco Company; Brown & Williamson Tobacco Corporation; Lorillard Tobacco Company; Liggett Group Inc.; The Council for Tobacco Research—U.S.A., Inc.; and The Tobacco Institute, Inc., Defendants.

No. 97–C–0347–C.

United States District Court, W.D. Wisconsin.

April 2, 1999.

**548**

James A. Olson, Lawton & Cates, S.C., Madison, WI, for Vincent Insolia, Karen Insolia.

Thomas J. Bastin, Sr., Brennan, Steil, Basting & MacDougall, Janesville, WI, for State of Wisconsin.

Richard Schmidt, Boardman, Suhr, Curry & Field, Madison, WI, for Physicians Plus Ins.

Michael T. Graham, Jackson, Lewis, Schnitzler and Krupman, Chicago, IL, for Associates' Health and Welfare.

Mullen J. Dowdal, Asst U.S. Attorney, Madison, WI, for Donna Shalala, plaintiff.

Michael L. Zaleski, Quarles & Brady, Madison, WI, for Philip Morris Incorporated.

James Clark, Foley & Lardner, Milwaukee, WI, for R.J. Reynolds Tobacco Company.

Timothy J. Pike, Peterson, Johnson & Murray S.C., Milwaukee, WI, for Brown & Williamson Tobacco Corp.

Ralph A. Weber, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C., Milwaukee, WI, for B.A.T. Industries P.L.C.

Bruce A. Schultz, Coyne, Niess, Schultz, et al., Madison, WI, for Lorillard Tobacco Company.

Robert B. Raschke, Lindquist & Vennum, Minneapolis, MN, for Liggett Group Inc.

James F. Gebhart, Attorney at Law, Madison, WI, for Hill & Knowlton, Inc.

John H. Schmid, Axley Brynelson, Madison, WI, for The Council for Tobacco Research.

John Koeppl, Attorney at Law, Madison, WI, for The Tobacco Institute, Inc.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil action for money damages brought by three former smokers and their spouses against the country's major cigarette manufacturers and two tobacco industry trade organizations. In an order dated December 17, 1998, I denied plaintiffs' motion for class certification. The case is back before the court on defendants' motion to sever the claims of the three sets of plaintiffs into three separate actions pursuant to Fed. R.Civ.P. 21. According to defendants, these claims have been joined improperly under Rule 20 because they do not arise from the same transaction or series of transactions and because they do not share a common question of fact or law. Plaintiffs contend that their claims arise from an industry-wide conspiracy to deceive consumers about the addictive, deadly characteristics of cigarettes. If these arguments sound familiar to readers of my opinion on class certification, it is because the standards for permissive joinder and class certification are alike in some significant ways. Even under the less stringent requirements of Rule 20, plaintiffs' claims are not sufficiently similar to warrant joining them in a single proceeding. Specifically, I conclude that plaintiffs cannot satisfy the first prong of the standard for permissive joinder because their claims do not arise from the same transaction or series of transactions. Defendants' motion will be granted. Familiarity with the facts and conclusions set forth in earlier opinions is assumed.

 Under Rule 20, joinder of claims, parties and remedies is strongly encouraged. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Where joinder is inappropriate, claims may be severed pursuant to Rule 21. The trial judge has broad discre-

tion to determine when joinder or severance are appropriate. *See Thompson v. Boggs*, 33 F.3d 847, 858 (7th Cir.1994); *Intercon Research, Etc. v. Dresser Industries*, 696 F.2d 53, 56 (7th Cir.1982). Rule 20(a) imposes two requirements for proper joinder: 1) the right to relief must be asserted by each plaintiff or defendant and must arise out of the same transaction, occurrence or series of transactions; and 2) some question of law or fact common to all the parties must arise in the action. *See Intercon*, 696 F.2d at 57.

The permissive joinder doctrine is animated by several policies, including the promotion of efficiency, convenience, consistency, *see Hohlbein v. Heritage Mutual Ins. Co.*, 106 F.R.D. 73, 78 (E.D.Wis.1985), and fundamental fairness. *See Intercon*, 696 F.2d at 57–58. These policies, not a bright-line rule, should govern whether the "same transaction" requirement imposed by Rule 20 has been satisfied. *See* 4 James Wm. Moore et al., *Moore's Federal Practice* § 20.05[1] (3d ed.1999). Rather than developing a single test, courts evaluate this issue on a case-by-case basis. *See* 7 C. Wright et al., *Federal Practice and Procedure* § 1653 at 382 (2d ed.1986); *McLernon v. Source International, Inc.*, 701 F.Supp. 1422, 1425 (E.D.Wis.1988). Nevertheless, some courts decide the first prong of the permissive joinder standard by asking whether there is a logical relationship between the operative facts and claims of a lawsuit. *See* 7 Wright et al., at § 1653; *McLernon*, 701 F.Supp. at 1425; *Mosley v. General Motors Corp.*, 497 F.2d 1330 (8th Cir.1974) (citing *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610, 46 S.Ct. 367, 70 L.Ed. 750 (1926)).

Problems associated with the "same transaction" requirement have arisen often in the context of securities fraud lawsuits involving multiple plaintiffs. The general consensus that emerges from these cases is that Rule 20 demands more than the bare allegation that all plaintiffs are victims of a fraudulent scheme perpetrated by one or more defendants; there must be some indication that each plaintiff has been induced to act by the same misrepresentation. *Compare Nor–Tex Agencies, Inc. v. Jones*, 482 F.2d 1093, 1100 (5th Cir.1973) (addition of second plaintiff in securities fraud lawsuit satisfied Rule 20(a) because claims of each plaintiff were based on series of false statements made by same defendant to both plaintiffs so that facts of claims "were inextricably woven together") *with Papagiannis v. Pontikis*, 108 F.R.D. 177, 179 (N.D.Ill.1985) (two plaintiffs could not be joined in same securities action against same defendant even though both claims involved scheme to sell interest in unprofitable oil wells; defendant implemented scheme in separate encounters, each of which necessarily controlled by individualized proof) *and McLernon*, 701 F.Supp. at 1425–26 (several hundred individual plaintiffs fraudulently induced into purchasing unregistered securities could not join in same action without amending their complaint to identify a specific fraudulent statement or statements that had reached all plaintiffs; misrepresentations set forth in original complaint emanated from many different sources). These cases are instructive for two reasons: 1) because of the analogous allegation in this case that defendants acted in concert to deceive plaintiffs regarding the ill-health effects smoking; and 2) because of the central role that this allegation plays in plaintiffs' explanation why their claims arise from the same series of transactions. Indeed, the only thread holding together plaintiffs' argument against defendants' motion to sever is the charge of conspiracy. Without it, there is little that separates these claims from the hundreds of other tobacco products liability lawsuits pending across the nation and, by extension, no useful purpose served by joining these plaintiffs in the same action. I said as much in the opinion and order denying plaintiffs motion for class certification. *See* dkt. # 169, at 17–18.

Misrepresentation and conspiracy are not the only issues difficult to fit into the transaction requirement of Rule 20. Although there are few cases that address the problems associated with joining multiple plaintiffs in a single products liability action, for obvious reasons, these issues are of crucial importance to plaintiffs' claims and this motion. As illustrated by *In the Matter of Asbestos II Consolidated Pretrial*, No. 86–C–1739, 1989 WL 56181 (N.D.Ill. May 10, 1989), medical and legal causation present formidable obstacles under Rule 20. *Asbestos II* involved a group of over 100 former pipefitters who

brought a products liability action against several companies responsible for manufacturing asbestos. The district court concluded that these claims did not arise reasonably and logically out of the same series of transactions. See 1989 WL 56181 at *1. Although all of the plaintiffs had contracted pleural asbestosis, the duration and magnitude of this disease varied from plaintiff to plaintiff. See id. Even though all of the plaintiffs had belonged to the same union and had been exposed to asbestos products while working at common sites, exposure did not happen "at the same time [or] at the same place." Id. Given that each claim turned on unique facts, the specter of jury confusion outweighed any benefit that might accrue to the parties and the judicial system by avoiding multiple lawsuits. See id.

■ With these principles in mind, I conclude that plaintiffs' claims do not arise from the same transaction or series of transactions, as they must in order to satisfy Rule 20. On an abstract level, dissimilarities in the claims brought by plaintiffs suggest that these claims are not related logically to one another. Plaintiffs began smoking at different ages; they bought different brands throughout their years as smokers; and they quit for different reasons and under different circumstances. As already mentioned, the only thread holding these disparate factual scenarios together is the allegation of an industry-wide conspiracy but this theory does not hold up on its terms much less under the weight of the individual issues associated with each plaintiff. In the opinion on class certification, I discussed at length why these claims did not arise from one another for the purpose of the typicality requirement of Rule 23(a). See dkt. # 169 at 23–24. Among other observations, I noted that plaintiffs' depositions revealed that tobacco industry propaganda regarding the health effects of smoking reached them, if at all, through a variety of different channels and with varying degrees of success. Complicating matters further, defendants allegedly unleashed the stream of misrepresentations in furtherance of the conspiracy over the course of a 30–year period. As emphasized by defendants, plaintiff Vincent Insolia began smoking almost two decades before the industry hatched its scheme and has not smoked for more than a quarter of a century. By contrast, plaintiffs Billy Mays and Maureen Lovejoy took up the habit in the early '50s and continued to smoke well into '90s. Even if the conspiracy charged held together, serious questions exist regarding medical causation. Again, I raised some of these concerns in the opinion on class certification. For example, medical evidence suggests that the cancer contracted by Mays may be attributable to a work-related accident, not smoking, and that Insolia's risk of developing lung cancer returned to that of a nonsmoker ten years after he quit. See id. at 18. With this motion, defendants have submitted the report of a pathologist that casts into doubt whether plaintiff Maureen Lovejoy ever had cancer. See Defs.' Rep.Br., dkt. # 256, exh. 4. In the face of this evidence, plaintiffs' argument that causation and other medical issues can be resolved without engaging in highly individualized inquiries is even less persuasive here than it was in their briefs in support of class certification.

The practical implications of allowing these claims to go forward suggests that joinder would not serve the policies underlying rule 20. Plaintiffs disagree, maintaining that joinder would promote efficiency. In doing so, plaintiffs rely heavily on two published opinions, see Hohlbein v. Heritage Mutual Ins. Co., 106 F.R.D. 73 (E.D.Wis.1985) and Leverence v. U.S. Fidelity & Guaranty, 158 Wis.2d 64, 462 N.W.2d 218 (Ct.App.1990), and an unpublished order issued by a state circuit court in a tobacco products liability lawsuit pending currently in Memphis, Tennessee. See Newcomb v. R.J. Reynolds, No. 89226–TD (Cir.Ct. Shelby Cty., TN February 5, 1998). Like the securities lawsuits, Hohlbein arose out of a series of fraudulent statements and omissions made by a defendant to more than one plaintiff—in this case, during the recruitment and employment of four executives by an insurance company. The district court acknowledged that some factual dissimilarities existed between these claims but held that they satisfied Rule 20 because each sprung "from a consistent pattern or practice of employment behavior on the part of a single defendant ..." See Hohlbein, 106 F.R.D. at 77. Specifically, the circumstances under which the company hired, employed

and fired each plaintiff bore sufficient similarity to one another, even if they were not identical; the company engaged in all of the fraudulent conduct within a discrete two and one-half year time period; at least one material aspect of this conduct applied uniformly to all of the plaintiffs; and the plaintiffs had sustained similar damages. *See id.* at 79. Taken together, these considerations persuaded the court that the additional burden imposed upon the defendant and the risk of jury confusion would be "far outweighed by the practical benefits likely to accrue to all players in the conservation of judicial, prosecutorial, and defensive resources." *Id.*

The other cases relied on by plaintiffs are of marginal precedential value. The order of consolidation from *Newcomb* is accompanied by no analysis or facts. *Leverence* represents an improvement over *Newcomb* but only a minor one. In *Leverence*, 158 Wis.2d at 72, 462 N.W.2d at 222, the court of appeals approved joinder of nearly 800 claims against various defendants for injuries caused by the excessive retention of moisture in the walls and roofs of over 200 pre-fabricated homes occupied by the plaintiffs. The court of appeals summarized the conclusion reached by the trial court but provided no indication how the lower court reached this conclusion or volunteered any analysis of its own. *See id.* at 95–96, 462 N.W.2d at 231. *See also In re Norplant Contraceptive Products Liab. Litigation*, 168 F.R.D. 579, 581 (E.D.Tex.1996) (finding without analysis that plaintiffs' claims of negligence, misrepresentation, and fraud arise from same transaction because all are premised on allegation that defendants failed to warn of dangers associated with products).

In contrast to the misrepresentations at issue in *Hohlbein*, the life span of the alleged conspiracy perpetrated by defendants is measured in decades, not years. Many of the facts needed to prove the existence of the conspiracy and its effect on plaintiffs Lovejoy and Mays would be irrelevant to the smoking history of plaintiff Insolia, who reached the age of majority before defendants launched the plan and who quit long before it petered out. Rather than the single employer implicated in *Hohlbein*, this case involves five tobacco companies who have manufactured hundreds of brands of cigarettes. It is un-

likely that a jury could keep track of which plaintiff smoked which brand and for how long while also retaining a coherent grasp of the minutiae associated with addiction, medical causation and legal causation. But this is not simply a matter of jury confusion. Judicial resources are wasted, not conserved, when a jury is subjected to a welter of evidence relevant to some parties but not others. Confusion can lead to prejudice when there are inadequate assurances that evidence will be weighed against the appropriate party and in the proper context. Defendants are correct that the trial plan proposed by plaintiffs not only fails to address this concern effectively but may actually compound it. Under the plan, a jury would be allowed to decide whether a conspiracy existed, whether cigarettes are unreasonably dangerous and whether defendants intentionally disregarded the rights of plaintiffs—all without regard to reliance, contributory negligence, assumption of risk, addiction and medical causation. These issues, which are normally linked inextricably with a final determination on liability, would be litigated in a subsequent phase. I share defendants' concern that partitioning the trial in such an unorthodox manner would prejudice their ability to protect their rights effectively.