# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-IA-01149-SCT

*MS LIFE INSURANCE COMPANY AND MS
CASUALTY INSURANCE COMPANY*

*v.*

*JAMES BAKER, JR., ET AL.*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/07/2003 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| COURT FROM WHICH APPEALED: | HUMPHREYS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | WALTER D. WILLSON |
| | ROY H. LIDDELL |
| | CHARLES E. GRIFFIN |
| ATTORNEYS FOR APPELLEES: | CHRISTOPHER WAYNE COFER |
| | HARRY MERRITT McCUMBER |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND REMANDED - 01/13/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., GRAVES AND RANDOLPH, JJ.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     James A. Baker, Jr., joined forty-four other plaintiffs in filing suit in Humphreys County Circuit Court against Mississippi Life Insurance Company, Mississippi Casualty Company, and fifty John Does (hereinafter referred to as Mississippi Life).   Generally, the plaintiffs claim that Mississippi Life illegally required credit insurance as part of an offered loan package and fraudulently inflated the cost of insurance premiums.    Mississippi Life

moved to sever plaintiffs' claims. The trial court denied the motion as well as Mississippi Life's subsequent Motion for Interlocutory Appeal. We then granted the Motion for Interlocutory Appeal. *See* M.R.A.P. 5.

## FACTS

¶2. Over a nine-year period, the forty-five plaintiffs in this action obtained loans from the Belzoni office of Peoples Financial Services of the Delta. The plaintiffs signed both the loan agreement and an agreement to purchase credit life, credit disability, and/or credit property insurance from Mississippi Life Insurance Company or Mississippi Casualty Insurance Company. With the exception of eight plaintiff-couples, each of the plaintiffs signed the documents in question separately and independently of their co-plaintiffs.

¶3. The relationship between Mississippi Life and Peoples Financial Services developed after Mississippi Life executed an agency agreement for Peoples Financial Services to sell credit insurance when offering loans to customers. In return, Peoples Financial Services received a commission for each sale of insurance. The record contains the deposition of James J. Jernigan, a General Agent for Mississippi Life who originally worked for Central Insurance Services.[1] He testified that Mississippi Life provided no formal training for Peoples Financial Services' employees. He stated that John Mitchell, President of Peoples Financial Services, provided training for its employees.

---

[1]Central Insurance Services was subsumed into Mississippi Life in 1992.

¶4.     In the six plaintiffs' depositions available, very little specific information is provided about the transactions with Mississippi Life.[2]   However, four out of the six were consistent in their testimonies to the extent that they alleged nothing was explained to them about the transactions.   One of the other two plaintiffs was not even aware she was suing Mississippi Life and could provide almost no details about her experience.   The other plaintiff testified that he was not aware that he had credit disability insurance; and although he was pleased when, by chance, he discovered he had such insurance, he felt aggrieved that his credit history had been damaged in the meantime.

¶5.     Mississippi Life moved to sever the joined plaintiffs, citing the differences in the property secured for each loan, the eleven-year period during which the loans were given, the various combinations of insurance purchased, and the different employees who processed the loans.   In response to Mississippi Life's Motion to Sever, the plaintiffs alleged that: (1) Proof of a conspiracy between Mississippi Life and Mississippi Casualty was evidenced by the deposition of James Jernigan of Central Insurance Services who testified that Mississippi Life paid an override commission of 10% to Central Insurance Services, "which [Central Insurance Services] has admitted, through its corporate deposition, that it does not perform any of the services, nor does it assume any of the responsibilities required under" Mississippi law; and (2) Proof of a profit sharing scheme between Mississippi Life and Peoples was evidenced by Jernigan's testimony "that the forms and disclosures were provided by [Mississippi] Life and

---

[2]The record also contains a Notice of Depositions of several other plaintiffs by means of video; however, if those videotapes or the transcripts of these depositions exist, they have not been included in the record.

[Mississippi] Casualty with no input by Peoples [Financial Services]."[3] The trial court denied Mississippi Life's Motion to Sever, simply stating that upon considering the motion it found joinder to be "proper under MS Rules [sic] Civil Procedure 20 and [t]he Mississippi Supreme Court decision of *American Bankers Insurance Company of Florida v. Alexander*, [818 So. 2d 1073 (Miss. 2001)].

### ANALYSIS

¶6.    Mississippi Life raises two issues in its appeal.  First, whether severance was proper under Mississippi Rule of Civil Procedure Rule 20(a).  And second, whether allowing joinder in this action will result in a waste of judicial resources and a violation of Mississippi Life's due process rights.  Finding the first issue dispositive, we decline to address the second.

   *A. Rule 20(a)*

¶7.    Mississippi Rule of Civil Procedure 20 gives trial courts broad discretion in determining when and how to try claims.  *First Investors Corp. v. Rayner*, 738 So. 2d 228, 238 (Miss. 1999).  Therefore, we review trial court decisions regarding venue and joinder for abuse of discretion.  *Janssen Pharmaceutica Group, Inc. v. Bailey*, 878 So. 2d 31, 45 (Miss. 2004); *Janssen Pharmaceutica Group, Inc. v. Armond*, 866 So. 2d 1092, 1095 (Miss. 2004).  We also note that "a trial court . . . abuses its discretion by joining parties in cases failing to satisfy the two requirements of Rule 20."  *Armond*, 866 So. 2d at 1097.  Like federal courts, we

---

[3] Further generalized allegations in the plaintiffs' Response to the Motion to Sever included, but were not limited to the following: Mississippi Life misrepresented the credit insurance as being a necessary part of the loan package "with all or some [of] these insurance products being misrepresented by the agents as a necessary prerequisite for the extension of credit and receipt of a loan; and " Mississippi Life   "failed to properly refund unearned insurance premiums pursuant to the 'Certificates of Insurance' issued to the [p]laintiffs."

review cases involving a question of the propriety of Rule 20(a) joinder on a case-by-case basis. *See **Mosley v. General Motors Corp.***, 497 F.2d 1330, 1333 (8th Cir. 1974).

¶8. Under Mississippi Rule of Civil Procedure 20(a), joinder is only proper if both (1) the different plaintiffs' causes of action arise out of the same transaction, occurrence, or series of transactions or occurrences; and (2) some question of law or fact common to all the plaintiffs will arise in the action. ***Bailey***, 878 So. 2d at 46 (citing Miss. R. Civ. P. 20(a) (2004)). The purpose of Rule 20(a) is to establish a "procedure under which several parties' demands arising out of the same litigable event may be tried together, thereby avoiding the unnecessary loss of time and money to the court and the parties that the duplicate presentation of the evidence relating to facts common to more than one demand for relief would entail." Miss. R. Civ. P. 20(a) cmt. (2004).

¶9. We recently amended the comment to Rule 20(a) significantly, clarifying that before an alleged "transaction or occurrence" will pass muster under Rule 20(a), the court must find a "distinct litigable event linking the parties." ***Bailey***, 878 So. 2d at 46 (citing Miss. R. Civ. P. 20(a) cmt. (as amended 2004)). The amendment to the rule resulted in the deletion of some of the language of the comment, including the statement that the "general philosophy of the joinder provisions of these rules is to allow virtually unlimited joinder at the pleading stage[.]" Miss. R. Civ. P. 20(a) cmt. (prior to 2004 amendment). Our language requiring that joined plaintiffs demonstrate the existence of a "distinct litigable event" semantically distinguishes Mississippi Rule of Civil Procedure 20(a) from the requirement under Federal Rule 20(a) that the claims between the different plaintiffs be "logically related." *See **Mosley***, 497 F.2d at 1333; ***Jamison v. Purdue Pharma Co.***, 251 F. Supp. 2d 1315, 1322 (S.D. Miss. 2003); ***Hanley***

5

***v. First Investors Corp.***, 151 F.R.D. 76, 78-79 (E.D. Tex. 1993); *see also* 6 Charles Alan Wright & Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1410 (2d ed. 1990).

*B. Recent Cases Interpreting Pre-amendment Rule 20(a)*

¶10.    In ***American Bankers Insurance Co. v. Alexander***, 818 So. 2d 1073, 1075 (Miss. 2001), *overruled on other grounds*, ***Capital City Insurance Co. v. G.B. "Boots" Smith Corp.***, 2004 WL 2403939, *11 (Miss. 2004), we dealt with a case of approximately 1371 borrower-plaintiffs who sued a lender, arguing that the lender had used an intricate kickback scheme to force-place the plaintiffs into a collateral protection insurance policy without their permission and without regard for their individual need of insurance. Citing, for the first time in a Mississippi case, the now-stricken language of Rule 20(a) indicating that we "allow virtually unlimited joinder at the pleading stage," the majority held that allowing joinder for the 1371 plaintiffs was not an abuse of discretion. *Id.* at 1075-79. The Court reasoned that joinder was appropriate since all of the plaintiffs' claims arose "out of the same pattern of conduct, the same type of insurance, and involv[ed] interpretation of the same master policy." *Id.*

¶11.    We only decided two cases after ***American Bankers*** in which we substantively addressed the application of Rule 20(a) prior to the amendment to the rule. First, in ***Prestage Farms, Inc. v. Norman***, 813 So. 2d 732, 734-35 (Miss. 2002), we dealt with a case in which all of the joined plaintiffs sued a corporation after its contract with local pig farmers allegedly resulted in a nuisance to those living nearby. Finding the issues presented in ***Norman*** to be analogous to ***American Bankers***, we held joinder of the plaintiffs to be proper. *Id.* at 736.

Next, in *Illinois Central R.R. v. Travis*, 808 So. 2d 928, 935-36 (Miss. 2002), *overruled on other grounds*, *Capital City Insurance Co. v. G.B. "Boots" Smith Corp.*, 2004 WL 2403939, *11 (Miss. 2004), we dealt with a case in which the plaintiffs' claims stemmed from a company policy of not warning or protecting its workers from the hazards of asbestos exposure and from the company's alleged breach of its duty to provide a reasonably safe place to work. Finding that the causes of action arose out of the same transaction or occurrence and that they also involved common questions of law or fact, we held joinder to be proper. *Id.* at 935-36.[4]

¶12.    However, our jurisprudence took on a decidedly more temperate approach to the issue of joinder when we handed down *Janssen Pharmaceutica, Inc. v. Armond*, 866 So. 2d 1092 (Miss. 2004), the same month the amendment to Rule 20(a) was announced.[5]  *Armond* dealt with a case of fifty-six plaintiffs who brought claims against their doctors and the manufacturer of the drug Propulsid. *Id.* at 1095. Even under the now-stricken "virtually unlimited" language of Rule 20(a), we found that joinder was improper in light of the fact that the claimants had

> different medical histories; alleg[ed] different injuries at different times; ingested different amounts of Propulsid over different periods of time; received different advice from [forty-two] different doctors who, in turn, received different information about the risks associated with the medication via six different warning labels utilized during the time covered by this lawsuit, and who each had his or her own reasons to prescribe Propulsid for the patients.

---

[4]We note that *Norman* and *Travis* are the only two Mississippi cases other than *American Bankers* which have used, among other authority, the now-stricken "virtually unlimited" language of Rule 20(a) as a justification for allowing joinder.

[5]Because the amendment to Rule 20(a) went into effect the day after we handed down *Armond*, the case was decided under the previous version of the rule.

*Id.* at 1096. Although the pre-amendment holding appeared to abrogate the ***American Bankers*** decision, we distinguished the facts and holdings of the two cases, rather than altogether overruling precedent. We stated that the distinguishing factor in the two decisions was that in ***American Bankers***, "[t]here was no decision to be made on a case-by-case basis, and there was nothing unique or individual about the defendants' treatment of any of the plaintiffs." ***Id.*** at 1097; *see also* ***Bailey***, 878 So. 2d at 46-47 (dictum) (discussing lack of uniqueness of ***American Bankers*** plaintiffs in comparison to Propulsid plaintiffs of ***Armond*** and ***Bailey***).

### *C. Same Transaction or Occurrence Requirement*

¶13.    Almost all post-***Armond*** cases discussing Rule 20(a) to any degree have dealt with analogous fact scenarios to ***Armond*** and reaffirmed its holding. *See* ***Purdue Pharma, L.P. v. Estate of Heffner***, 2004 WL 2249488 (Miss. 2004); ***Janssen Pharmaceutica, Inc. v. Jackson***, 883 So. 2d 91 (Miss. 2004); ***Culbert v. Johnson & Johnson***, 883 So. 2d 550 (Miss. 2004); ***Janssen Pharmaceutica, Inc. v. Keys***, 879 So. 2d 446 (Miss. 2004); ***Janssen Pharmaceutica, Inc. v. Scott***, 876 So. 2d 306 (Miss. 2004); ***Janssen Pharmaceutica, Inc. v. Grant***, 873 So. 2d 100 (Miss. 2004); ***Bailey***, 878 So. 2d at 46-49. This case presents us with another post-amendment opportunity to clarify our joinder jurisprudence in a different context in which claims of mass fraud and misrepresentation arise.

¶14.    In both ***Armond*** and ***Bailey***, we discussed the case of ***Insolia v. Philip Morris, Inc.***, 186 F.R.D. 547 (W.D. Wis. 1999).[6] ***Insolia*** dealt with a case of three former smokers and their

---

[6]Although the ***Insolia*** court stated that "[u]nder Rule 20, joinder of claims, parties and remedies is strongly encouraged," ***Insolia***, 186 F.R.D. at 548, we note that ***Insolia*** is indeed a federal case, and "the federal rule interpretation must be considered in light of the class

8

spouses who alleged they were subject to an industry-wide conspiracy to mislead consumers regarding the negative effects of smoking. *Id.* at 548. In discussing the general consensus which has emerged from federal courts dealing with Rule 20(a) in the context of securities fraud lawsuits, the court rightly noted that the rule "demands more than the bare allegation that all plaintiffs are victims of a fraudulent scheme perpetrated by one or more defendants[.]" *Id.* at 549. The court added that "there must be some indication that each plaintiff has been induced to act by the same misrepresentation." *Id.* (citing *Nor-Tex Agencies, Inc. v. Jones*, 482 F.2d 1093, 1100 (5th Cir. 1973); *McLernon v. Source Int'l, Inc.*, 701 F. Supp. 1422 (E.D. Wis. 1988); *Papagiannis v. Pontikis*, 108 F.R.D. 177, 179 (N.D. Ill. 1985)).

¶15.    *Jones* dealt with a securities fraud claim against a defendant who made a series of false statements in regard to the viability of oil production on certain pieces of land. *Jones*, 482 F.2d at 1095-96. The defendant, Jones, originally made the statements to Riley, an individual investor; but upon relying on the same statements, Riley opted, as president of Nor-Tex, to invest corporate funds in the project**.** *Id.* Nor-Tex sued Jones, alleging securities fraud and subsequently joined Riley as plaintiff. *Id.* at 1099. The Fifth Circuit found joinder of the two plaintiffs appropriate since both Nor-Tex's and Riley's claims "were based on a series of false statements made by Jones . . . [and] the facts concerning Nor-Tex were inextricably woven together with the facts concerning . . . Riley." *Id.* at 1100.

---

action mechanism available though [Federal Rule of Civil Procedure 23], which has no counterpart in the Mississippi Rules of Civil Procedure." *American Bankers*, 818 So. 2d at 1088 (Waller, J., dissenting). This is particularly true in light of the recent amendment to Rule 20.

¶16.   The trial court in *McLernon* dealt with a case similar to the one before us today.  In that case, over three hundred plaintiffs alleged that they had been fraudulently induced into buying unregistered securities.  *McLernon*, 701 F. Supp at 1424.   In ruling that the plaintiffs were improperly joined under Federal Rule of Civil Procedure 20(a), the court observed

> It is vaguely suggested that all plaintiffs relied upon certain misrepresentations and omissions in newspaper advertisements, brochures, television appearances and personal correspondence.  But it is not clear that these misrepresentations are part of all plaintiffs' claims.  Indeed, other portions of the amended complaint indicate that some plaintiffs' claims arise out of oral misrepresentations not made to other plaintiffs.

*Id.*   In spite of the plaintiffs' initial failure to properly join, the district court allowed the plaintiffs to amend their complaint in the interest of judicial economy. *Id.* at 1426.

¶17.   Both *Jones* and *McLernon* provide valuable sources of persuasive authority in the case at hand.   Though the forty-five plaintiffs in this case have lodged multifarious complaints of deception by Mississippi Life in their pleadings, motions, and briefs, they have failed to present any evidence which specifically identifies any common misrepresentation to all plaintiffs by Mississippi Life, either written or oral.   At best, four of the plaintiffs consistently testify, without identifying any deception on the part of Mississippi Life, that Mississippi Life explained nothing to them when it convinced them to purchase the insurance policies.   Beyond that, the record reveals nothing more than bare allegations devoid of any evidence that each plaintiff has been induced to act by a common misrepresentation.

¶18.   Unlike *Jones*, no plaintiff has alleged fraudulent statements which are "inextricably woven together with the facts concerning" a statement made to any other plaintiff.   Instead,

10

more like the plaintiffs in *McLernon*, these plaintiffs have "vaguely suggested that all plaintiffs relied upon certain misrepresentations and omissions" on the part of Mississippi Life.

¶19. We quote the language of *McLernon* to provide future courts and plaintiffs with specific guidance as to the evidentiary burden of proof borne by joined plaintiffs who wish to meet the demands of Rule 20(a) in regard to their allegations of fraud or misrepresentation:

> In order to satisfy Rule 20(a), [plaintiffs] must allege that their claims arise from one or more uniform misrepresentations. To do so, they must specifically identify which representations and/or omissions, if any, were made to *all* plaintiffs. If the representation was written, the writing in which the representation appeared and the date of publication must be set forth. That plaintiffs' claims may be premised on oral misrepresentations does not preclude joinder, provided plaintiffs allege that the substance of the oral representations was standardized . . . Those plaintiffs whose claims arise out of representations not made to other plaintiffs must be specifically identified and will be subject to severance.

*Id.* at 1425-26 (emphasis in original).

¶20. Because the plaintiffs in the case at hand have exclusively relied upon general allegations as the basis for their claim of joinder under Rule 20(a), rather than supplementing their allegations with substantive evidence, they consequently do not meet the prerequisite that the claims be based upon the "same transaction or occurrence."[7] Neither has Mississippi Life presented sufficient evidence to show that the plaintiffs have not met the "same transaction and occurrence" requirement of Rule 20. Instead, Mississippi Life merely relies on the

---

[7]This holding also applies to the couple-plaintiffs in this action. Nowhere in the record does any one couple allege an action arising out of the same misrepresentation, and we will not imply one absent evidence on the record that such a misrepresentation was made to one or more plaintiffs. We also note that since plaintiffs' claims must meet both prongs of the test in order to establish a joinable claim under Rule 20(a), their failure to satisfy the first prong is dispositive of the case.

multiplicity of loan transactions, the time span during which the loans were made, and the different employees with whom each plaintiff dealt as a basis for arguing that the causes of action do not arise from the same transaction or occurrence.[8]

¶21. Since the plaintiffs did not satisfy the first prong of Rule 20(a), they consequently did not present a joinable claim under the rule. *See* Miss. R. Civ. P. 20(a) cmt. (2004) ("Both of these requirements must be satisfied in order to sustain party joinder under Rule 20(a)"). We reverse the trial court's decision denying Mississippi Life's Motion to Sever and remand to the trial court for the purpose of requiring that both the plaintiffs and Mississippi Life present substantive evidence demonstrating the propriety or impropriety of joinder. We further add that trial courts, in deciding whether to grant a motion to sever, must specifically state on the record the reasons for granting or denying the motion under Rule 20(a).

## CONCLUSION

¶22. We find that the trial court abused its discretion in ruling on Mississippi Life's Motion to Sever with such scant proof offered for, or in opposition to, joinder. We reverse the trial court's decision denying Mississippi Life's Motion to Sever and remand to the trial court to require both the plaintiffs and Mississippi Life to present substantive evidence demonstrating that propriety or impropriety of joinder, and then to rule on the motion.

¶23. **REVERSED AND REMANDED.**

---

[8]Though Mississippi Life may argue that the plaintiffs' dealings with separate loan officers serves as sufficient evidence for severance, analogous to the doctors in *Armond*, nothing in the record supports this contention. The only evidence even hinting that different employees handled the various loans are the loan documents which contain the signatures of different employees. We will not take this sparse evidence and automatically presume this means the facts of the transactions or occurrences on which each plaintiff's claim are based are so distinctive as to warrant severance.

**SMITH, C.J., COBB, P.J., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. DIAZ, J., NOT PARTICIPATING.**