# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-IA-01422-SCT

*DILLARD'S, INC.*

**v.**

*MICHAEL J. SCOTT*

| | |
|---|---|
| DATE OF JUDGMENT: | 8/6/2002 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DANIEL P. JORDAN, III |
| | CHRISTY D. JONES |
| | ROBERT L. JOHNSON, III |
| ATTORNEYS FOR APPELLEE: | DENNIS C. SWEET |
| | OMAR LAMONT NELSON |
| | DALE DANKS, JR. |
| | PIETER JOHN TEEUWISSEN |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED; WRIT OF PROHIBITION DENIED - 05/05/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH

## NO. 2003-IA-02723-SCT

*DILLARD'S, INC. f/k/a DILLARD DEPARTMENT STORES, INC.*

*v.*

*AFRICIA JOHNSON*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/16/2003 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |

ATTORNEYS FOR APPELLANT:      DANIEL P. JORDAN
                                    CHRISTY D. JONES
                                    ROBERT L. JOHNSON
ATTORNEYS FOR APPELLEE:      DENNIS C. SWEET
                                    OMAR LAMONT NELSON
                                    DALE DANKS, JR.
                                    PIETER JOHN TEEUWISSEN
NATURE OF THE CASE:          CIVIL - PERSONAL INJURY
DISPOSITION:                        REVERSED AND REMANDED; WRIT OF
                                    PROHIBITION DENIED - 05/05/2005
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     This is the consolidation of two cases on appeal, both arising from the Circuit Court of Hinds County.  In both complaints, multiple plaintiffs allege that Dillard's engaged in a scheme of racial discrimination or racial profiling resulting in the wrongful detention, harassment, and mistreatment of Dillard's customers and employees at numerous Dillard's store locations. The allegations of both complaints include diverse claims of false imprisonment, assault and battery, negligence, negligent control of servants, defamation, intentional infliction of emotional distress, invasion of privacy, malicious prosecution, conspiracy, gross negligence and malice, as well as alter ego.

*Scott* Procedural History

¶2.     Twenty-three plaintiffs filed the Original Complaint in the *Scott* litigation on November 16, 2000.  Plaintiffs amended the complaint on December 20, 2000.  On March 19, 2001, Dillard's moved to sever and dismiss the out-of-state claims in *Scott*.  This motion was

subsequently denied on August 6, 2002. On May 9, 2001, Dillard's filed its Notice of Removal. The case was subsequently remanded back to the state court on February 11, 2002. On May 28, 2002, plaintiffs filed a motion to amend the first amended complaint to add thirteen additional plaintiffs. This motion was subsequently granted although plaintiffs never filed an amended complaint. Dillard's filed a motion to recuse Circuit Court Judge Tomie Green on August 2, 2002. On August 6, 2002, the trial court denied Dillard's Motion to Sever Misjoined Parties. The motion to recuse was denied on August 12, 2002.

¶3. Defendants then filed a Petition for Writ of Prohibition seeking the recusal of Judge Green and a Petition for Interlocutory Appeal of the orders related to joinder. On October 1, 2003, this Court granted Dillard's permission to appeal both the joinder and recusal issues and stayed all trial court proceedings pending a decision on appeal. See M.R.A.P. 5.

### *Johnson* Procedural History

¶4. Forty-six plaintiffs filed their original Complaint in *Johnson* on August 31, 2001. The case was removed to federal court and subsequently remanded back to the state court. On November 6, 2003, Dillard's filed a motion to stay *Johnson* pending the *Scott* appeal, which was denied on December 16, 2003. The trial court also denied Dillard's request to certify the issue for interlocutory appeal. Dillard's then sought an emergency stay from this Court which was granted, and this Court thereafter consolidated *Johnson* and *Scott.*

¶5. Dillard's raises the following issues on appeal:

> **I.     Whether the trial court abused its discretion under Mississippi Rule of Civil Procedure 20(a) by failing to sever and/or dismiss the claims of non-resident Plaintiffs who alleged factually distinct events that occurred outside this state.**

3

**II.** **Whether the Honorable Tomie T. Green should have recused herself in both cases.**

## FACTS

### *Facts related to Venue*

¶6.    The *Scott* case involves 23 plaintiffs each alleging that they were wrongfully mistreated and harassed at various Dillard's store locations.   Of the plaintiffs involved in the *Scott* suit, four reside in Hinds County, Mississippi, eleven reside in Texas, six reside in Louisiana, and two in Arkansas.   Of these alleged incidents, only one occurred in Hinds County, Mississippi. Three other incidents occurred in Mississippi, but outside of Hinds County.   All other incidents occurred outside of Mississippi.

¶7.    The *Johnson* case involves 46 plaintiffs also alleging that they were mistreated in different ways while shopping or working at a variety of Dillard's stores.   Of these plaintiffs, fourteen reside in Mississippi, while the remaining plaintiffs reside in other states (Kentucky, Alabama, Nevada, Texas, Florida, Arkansas, and Colorado).   Of the fourteen Mississippi residents, only six reside in Hinds County, Mississippi.   Of these alleged incidents, not a single one occurred in Hinds County.

### *Facts related to Recusal*

¶8.    On March 4, 2002, WLBT-TV in Jackson, Mississippi, aired a "Three on Your Side" investigative report, in which the reporter stated that Judge Tomie Green had accused the Jackson Police Department of racial profiling and harassment of her during a traffic stop.   A transcript of the newscast reflects the following:

4

Reporter: Here at home, a charge of racial profiling by white Jackson police officers. What makes it unusual is that the accuser is a Hinds County Circuit Court Judge.

Judge Green: It's eroded my faith in public safety in Jackson and Hinds County.

Reporter: Circuit Court Judge Tomie Green is angry...and hurt over an incident she describes as racial profiling. According to Judge Green on Saturday, February 23rd around seven at night she was traveling on Hanging Moss Drive heading downtown when two officers in separate patrol cars put on their blue lights behind her. She says she pulled over to the right and stopped. Why was she pulled over?

Judge Green: He just started to tell me I was driving in the wrong lane that I needed to go [to] the department of public safety and get a book and learn how to drive and be in the right lane.

Reporter: But acting police chief Jim French says the officer tells a different story.

Jim French: The car pulled out in front of him and nearly caused him to wreck

Reporter: But the officer, who Chief French will not name, did not issue Judge Green a ticket. The Judge says the officer's manner was abusive.

Judge Green: He just kind of harassed me in terms of the questioning. I said there's no such thing as the wrong lane and I was just driving.

Reporter: Judge Green drives a 2001 Jaguar with a plate that reads lawkeeper. She says the fact that she's black and drives an expensive car caused the officers to stop her...and nothing else. She asked to speak to the other officer on the scene, but says the first officer told her he had nothing to do with it. Then according to Judge Green she drove to precinct three about a mile away on Northside Drive to file a complaint. The precinct was closed. Chief French says he cannot say much about this incident because internal affairs is looking into it. However...

French: This Department specifically prohibits stops for racial profiling, sexual profiling.

5

Reporter:    He says it may take a couple of weeks for internal affairs to finish its report.  We'll keep you posted . . .

¶9.    Subsequently, Dillard's filed the motion to recuse requesting that Judge Green recuse herself, averring that this incident created a conflict for her to preside in the cases sub judice.

## ANALYSIS

### I.    Joinder and Venue

¶10.    The standard of review regarding joinder and venue is abuse of discretion.  *Ill. Cent. R.R. v. Travis*, 808 So. 2d 928, 931 (Miss. 2002).  *See also Janssen Pharmaceutica, Inc. v. Armond*, 866 So. 2d 1092 (Miss. 2004).

¶11.    Dillard's argues that the trial court abused its discretion when it failed to sever factually distinct claims against it and that the joinder of these claims into a single mass action exceeds the scope of permissible joinder under Rule 20(a) of the Mississippi Rules of Civil Procedure. Dillard's relies on *Armond* to support its argument that these claims should be severed. Plaintiffs argue that the Rule 20 standard is met and that the claims arise out of the same transaction, occurrence, or series of transactions or occurrences and there are questions of law or fact common to all plaintiffs.  Plaintiffs argue joinder is proper because they allege a common scheme among Dillard's stores to racially profile customers, and allege a failure to enforce proper retail security protocol at Dillard's stores.

¶12.    M.R.C.P. 20(a) states in pertinent part:

> All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences, and if any question of law or fact common to all these persons will arise in the action.

6

The scope of Rule 20 was clarified by this Court's ruling in *Armond*, and this Court finds that *Armond* and its progeny control the joinder issues in the cases sub judice. In *Armond*, 56 plaintiffs sued for injuries they claimed were caused by a prescription medication Propulsid. *Id.* *Armond* involved 56 plaintiffs who had different medical histories, different injuries at different times, ingested different amounts of Propulsid over different periods of time, and received different advice from 42 different doctors. *Id.* at 1096. This Court found in *Armond* that there was no single transaction or occurrence or series of transactions or occurrences to satisfy Rule 20, and severed all claims. *Id.* at 1101.

¶13. Recently, this Court further clarified when joinder is appropriate under Rule 20 in *Ill. Cent. R.R. v. Gregory*, 2005 WL 613490 (Miss. March 17, 2005). In *Gregory*, this Court stated the following with regards to when joinder is appropriate:

> [The] determination includes, among other things, whether a finding of liability for one plaintiff essentially establishes a finding for all plaintiffs, indicating that proof common to all plaintiffs is significant. The appropriateness of joinder decreases as the need for additional proof increases. If plaintiffs allege a single, primary wrongful act, the proof will be common to all plaintiffs; however separate proof will be required where there are several wrongful acts by several different actors. The need for separate proof is lessened only where the different wrongful acts are similar in type and character, and occur close in time and/or place.

2005 WL 613490, *4. This Court also stated that, as a general rule, "when an act or omission of a defendant does not affect all plaintiffs in much the same way, then there is probably not a distinct litigable event." *Id.* at ¶ 13.

¶14. The cases sub judice involve over seventy plaintiffs with over fifty diverse factual allegations that occurred in thirty-two separate stores, involving a multitude of different

7

employees and witnesses, and occurred over a seven year time period. The claims allege incidents in ten separate states: Mississippi, Alabama, Iowa, Tennessee, Texas, Florida, Arkansas, Colorado, Louisiana and Kentucky. Only one plaintiff, Consuelo Jones, alleges that a tort occurred in Hinds County, and she is the only plaintiff who has sued a Hinds County resident: Jackson Police Department Officer Louie Hutchins who also worked as a security guard at Dillard's Metrocenter store. Only four plaintiffs in *Scott* and six in *Johnson* reside in Hinds County. The complaints cover a broad spectrum of issues, with a multitude of facts unique to individual plaintiffs. Five plaintiffs allege they were accused of stealing while employees of Dillard's, three of whom were terminated as a result, while the other two employees allege they were questioned regarding possible theft of merchandise from the store. Other plaintiffs allege they were not allowed to return merchandise. Some claim they were taken to back offices where they were questioned. Others allege they were forced to remove articles of clothing. Still others allege their cars were searched. Some, but not all, plaintiffs allege they were physically assaulted. Many plaintiffs claim they were allowed to leave the store after the alleged incidents, while others were arrested and jailed. Accusations of shoplifting were made by different sales clerks, security officers, and off-duty policemen who were employed by the defendant. Obviously, the majority, if not all of the claims will assuredly require separate witnesses to prove or disprove plaintiffs' allegations and Dillard's denials.

¶15. Plaintiffs argue that joinder is proper according to *American Bankers Ins. Co. v. Alexander*, 818 So. 2d 1073 (Miss. 2001). However, *American Bankers* was distinguished from *Armond* because in *American Bankers*, "there was no decision to be made on a case by

8

case basis, and there was nothing unique or individual about the defendants' treatment of any of the plaintiffs." *Armond*, 866 So. 2d at 1092. In the cases sub judice there exists an indeterminable number of factual and legal issues which will have to be determined on a plaintiff-by-plaintiff and state-by-state basis. The interpretation and application of law from the various foreign jurisdictions will necessarily be required which would further obfuscate the proceedings. Each plaintiff has a unique set of facts, as their complaints describe a potpourri of allegations of wrongdoing and damage.

¶16. This Court held that *American Bankers* was distinguishable from *Grayson v. K-Mart Corp.*, 849 F. Supp. 785 (N.D. Ga. 1994), where a Georgia court held that eleven age discrimination claims against different stores owned by the same retail chain but involving unique circumstances, did not arise out of the same transaction or occurrence. *American Bankers*, 818 So. 2d at 1079. In describing *Grayson*, this Court stated that:

> A joint trial of plaintiff's claims would have involved eleven different factual situations, eleven sets of work histories, eleven sets of witnesses and testimony, and the laws of four different states. The case at bar stands in stark contrast to the factual situations in Grayson. Here, each plaintiff has alleged the very same claims involving the same insurance policies. As such, the prejudice and confusion contemplated by the defendant is not sufficient to warrant separate trials.

*Id.* The cases sub judice are analogous to *Grayson* and based on *Armond, Gregory,* and Rule 20 as amended, plaintiffs' claims do not arise out of the same transaction or occurrence and accordingly must be severed. In the *Scott* case, a joint trial of plaintiffs claims would involve over 20, and in *Johnson* over 40, different factual situations and sets of witnesses, the laws of ten different states, and claims by employees and customers of a multitude of Dillard's stores

9

throughout the country. We reaffirm this Court's statement as found in **Crossfield Products Corp. v. Irby**, 2005 WL 246781 (Miss. 2005), "In the case sub judice the plaintiffs do not have a distinct litigable event that links them together." **Id.** at *2 (¶9). Accordingly, the out-of-state plaintiffs with no connection to Mississippi and whose causes of action accrued out of state shall be dismissed without prejudice and all remaining cases without an independent basis for venue in Hinds County shall be severed and transferred to the appropriate jurisdiction where each plaintiff could have brought his or her claim without reliance on an improperly joined plaintiff. See **Amchem Prods., Inc. v. Rogers**, 2005 WL 613445 (Miss. 2005).

## II. Recusal

¶17. This Court applies a manifest error standard when reviewing a judge's refusal to recuse. **Bredemeier v. Jackson**, 689 So. 2d 770, 774 (Miss. 1997). According to the Code of Judicial Conduct, a judge must disqualify when that judge's "impartiality might be questioned by a reasonable person knowing all the circumstances ... including but not limited to instances where: (a) the judge has a personal bias or prejudice concerning a party." Code of Judicial Conduct, Canon 3(E)(1). The question to ask is, would a reasonable person, knowing all the circumstances, harbor doubts about the judge's impartiality? **Frierson v. State**, 606 So. 2d 604, 606 (Miss. 1992). To overcome the presumption that a judge is qualified and unbiased, the evidence must produce a reasonable doubt about the validity of the presumption. **Turner v. State**, 573 So. 2d 657, 678 (Miss. 1990).

¶18. Dillard's argues that the trial judge should be recused because Dillard's uses off-duty police officers for security at its stores and because plaintiffs claim that the officers have a

proclivity for racial profiling. Indeed, one of the named defendants in the *Scott* case is a member of the Jackson Police Department. Dillard's argues that the trial judge's accusations against Jackson Police Department officers are remarkably similar to the plaintiffs' assertions against the off-duty police officers employed at Dillard's. Plaintiffs argue that their allegations do not hinge on the independent conduct of Jackson Police Officers and that instead they have alleged a pattern and practice of harassment by Dillard's employees and other agents, some of whom are local police officers.

¶19. This Court finds that Dillard's has offered insufficient evidence to overcome the presumption that the trial judge is qualified and unbiased. Dillard's did not take the necessary steps to insure that a record was made on the recusal hearing. This Court has stated that,"[t]o the appellant falls the duty of insuring that the record contains sufficient evidence to support his assignments of error on appeal." *Burney v. State*, 515 So. 2d 1154, 1160 (Miss. 1987). Without a record of the recusal hearing, the uncut video tapes of WLBT's interview with Judge Green, or the testimony from the reporter who conducted the interview, the news broadcast is the only material evidence that Dillard's has presented, which it alleges exhibits bias or prejudice of the trial judge.

¶20. Although the reporter's statements in the news broadcast that Judge Green accused the Jackson Police Department of racial profiling aroused suspicion by Dillard's, this Court is not satisfied that the news broadcast along with the rulings of the trial court, constitutes evidence of such sufficiency or weight that a reasonable person knowing all the circumstances would harbor doubts about Judge Green's impartiality or that she will be biased or prejudiced in the cases sub judice. The broadcast does not contain a statement by Judge Green that she was

11

racially profiled. The only statements attributable to Judge Green were that she was harassed by the officers and that her faith in public safety had been eroded. Judge Green specifically denied alleging racial profiling with regard to the incident in her response to the writ of prohibition. The news broadcast statements alone would not cause a reasonable person to harbor doubts about the trial judge's impartiality. In the trial court's response to the writ of prohibition, the trial judge avers that she neither knows any of the parties nor knows any of Dillard's employees or witnesses. Dillard's does not claim that the police officer who made the February 23, 2002, stop is employed by Dillard's. The trial judge further averred that she frequently presides over both criminal and civil matters where Jackson Police Officers are witnesses and/or defendants, and neither the City of Jackson nor the Police Department have requested that Judge Green recuse herself because of the incident.

¶21. This Court presumes that a trial judge sworn to administer impartial justice, is qualified and unbiased. *Turner*, 573 So. 2d at 678. Dillard's has failed to produce sufficient material facts to overcome this presumption. This Court holds that neither suspicion, nor mere speculation, unsupported by evidentiary proof can be the basis for the recusal of a judge. "Mere speculation is not sufficient to raise a reasonable doubt as to the validity of the presumption that the trial judge was qualified and unbiased." *Farmer v. State*, 770 So. 2d 953, 958 (Miss. 2000).

¶22. Dillard's also argued that Judge Green's rulings in the cases have been prejudicial and should be considered as evidence to support its motions for recusal. In determining whether a trial judge should have recused herself, the reviewing court must "examine every ruling to determine if those rulings were prejudicial to the complaining party." *Jones v. State*, 841 So.

12

2d 115, 135 (Miss. 2003). However, this Court has also ruled that, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Id.* at 135. Dillard's argues primarily that the refusal to sever the *Scott* plaintiffs and that the refusal to sever plaintiffs' claims and to stay the *Johnson* case were prejudicial rulings that support recusal.

¶23. This Court finds that neither the refusal to sever the *Scott* plaintiffs, nor the refusal to grant a stay in the *Johnson* case, are sufficient grounds for recusal. This Court clarified the Rule 20 joinder issue in *Armond* on February 19, 2004. Judge Green refused to sever the cases on August 6, 2002, almost a year and a half before the *Armond* decision. Therefore, while we decided the severance issue differently, Judge Green's decision was not contrary to established law at the time she made the decision and therefore does not warrant her recusal. Although the refusal to grant the stay in the *Johnson* case, after this Court had already stayed *Scott,* pending appeal of the recusal and joinder issues, is problematical, this refusal would not cause an objective reasonable person to question Judge Green's impartiality.

¶24. Finding no evidence that Judge Green's impartiality would be questioned by a reasonable person, this Court will deny the writ of prohibition to recuse the trial judge.

## CONCLUSION

¶25. The out-of-state plaintiffs with no connection to Mississippi and whose causes of action accrued out of state shall be dismissed without prejudice, and all remaining cases without an independent basis for venue in Hinds County shall be severed and transferred to the appropriate jurisdiction where each plaintiff could have brought his or her claim without reliance on an improperly joined plaintiff. Therefore, we reverse the trial court's orders

13

denying the motions to sever or transfer, and we remand these cases for further proceedings consistent with this opinion. Furthermore, the petition for writ of prohibition to recuse the trial judge is denied.

¶26.   **REVERSED AND REMANDED; WRIT OF PROHIBITION DENIED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON AND DICKINSON, JJ., CONCUR.  EASLEY AND GRAVES, JJ., CONCUR IN PART AND DISSENT IN PART WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**