# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CA-01031-SCT

*BILLY G. ALEXANDER, et al.*

*v.*

*AC AND S, INC. f/k/a ARMSTRONG*
*CONTRACTING & SUPPLY COMPANY, INC., et al.*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/21/2005 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | JEFFERSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | ROBERT GORDON TAYLOR, III |
| | ROBERT A. PRITCHARD |
| | HELEN ELIZABETH SWARTZFAGER |
| ATTORNEYS FOR APPELLEES: | T. HUNT COLE, JR. |
| | THOMAS W. TARDY, III |
| | LAURA DEVAUGHN GOODSON |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 01/18/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     This case is before this Court on appeal from the Circuit Court of Jefferson County, Mississippi, by plaintiffs (hereinafter "Alexander") who allege they suffered injuries caused by exposure to asbestos. The claims of plaintiffs in the action who were residents of Mississippi, or who alleged exposure to asbestos in the state, were transferred to the circuit court in the county where each plaintiff lived or claimed exposure to asbestos.  Additionally, the claims of 159 plaintiffs who were neither residents of the state of Mississippi nor claimed

exposure to asbestos within the state were "dismissed without prejudice pursuant to the recent decisions of the Mississippi Supreme Court." The first-named plaintiff of the 159 was Billy G. Alexander, a resident of Muscle Shoals, Alabama, who claimed he had been exposed to asbestos in Alabama. Concerned about their ability to maintain suit in other jurisdictions, those 159 persons filed this appeal.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2. This case was originally filed on April 27, 2000. There were fifteen plaintiffs, hailing from Mississippi, Louisiana, Texas, and Indiana, and 122 defendants. An amended complaint was filed on June 16, 2000, which added three more plaintiffs from Mississippi and 182 plaintiffs from Alabama.

¶3. The record is devoid of further pleadings until September 30, 2004, when defendant 3M Company filed a motion to dismiss predicated upon our order in *Harold's Auto Parts, Inc. v. Mangialardi*, 889 So. 2d 493 (Miss. 2004). The motion alleged that "[s]ince the Complaint was filed . . . [the] Plaintiffs have provided no information to make it possible to determine what claims each of them asserts against which Defendants." Other defendants later filed a motion to dismiss predicated upon the *Mangialardi* order and argued that the order was applicable to asbestos cases. Alexander responded that *Mangialardi* should not be applied retroactively and that property rights and access to the courts under the Mississippi Constitution of 1890 were at risk; they also raised due process and equal protection concerns.

¶4. After a lengthy hearing on October 15, 2004, the trial court entered an order on December 23, 2004, after considering the merits of the briefs and arguments of the parties.

2

The order required the parties to attend another hearing set for January 24, 2005, by which time the plaintiffs would be required to "inform the Court of any Plaintiffs residing outside out of the State of Mississippi who have original jurisdiction[al] within the State of Mississippi OR why, otherwise, each individual Plaintiff's case should not be dismissed."

¶5. The trial court additionally directed the severance and transfer of "all those in-state Plaintiffs without original jurisdiction and venue in Jefferson County, Mississippi, to the appropriate court of venue and jurisdiction, and dismiss, without prejudice, all those out-of-state Plaintiffs without original jurisdiction and venue in Jefferson County, Mississippi." The trial court also required Alexander to produce *Mangialardi*-compliant information in database form as to each plaintiff; specifically, their name, county and state of residence, county and state of alleged exposure, county of residence of a Mississippi defendant (if relevant), and whether the plaintiff should be dismissed for lack of jurisdiction and venue or where the case should be transferred.

¶6. Over the next weeks, the plaintiffs began to produce the information required by the order, which in many cases demonstrated that the plaintiffs had no connection with the state of Mississippi; for instance, one plaintiff was a resident of Indiana who claimed to have been exposed to asbestos in Indiana. Alexander urged that venue in a Mississippi jurisdiction was still proper because the asbestos may have been manufactured or otherwise distributed by a Mississippi defendant; in addition, a conspiracy theory was offered that attempted to tie the various defendants together and establish venue in Mississippi.

¶7. On February 11, 2005, the trial court entered an agreed order that was signed by counsel for the plaintiffs and the "Liaison Attorney for Defendants." The agreed order

3

required further detail from Alexander in order to properly comply with *Mangialardi* and other "recent decisions of the Mississippi Supreme Court." Important for purposes of this appeal is the requirement that "[f]or all Plaintiffs who are not residents of the State of Mississippi and whose cause of action did not occur or accrue in Mississippi, i.e. their alleged exposure to asbestos did not take place in the State of Mississippi, a notation of 'Dismissal Without Prejudice'" was to be placed by their name in the database.

¶8. The trial court also required Alexander to file an amended complaint, but "determined that issues relating to venue and dismissal should be addressed prior to the filing of any amended complaint complying with *Mangialardi*." However, the trial court did not prohibit Alexander from filing an amended complaint prior to transfer.

¶9. The plaintiffs responded to this order on March 10, 2005. Despite the fact that the order was agreed to and signed by the parties, Alexander specifically noted their objections to its content. The only reason given for maintaining venue in Jefferson County was that "[t]he Plaintiffs were properly joined under Mississippi law" at the time of filing.

¶10. On April 29, 2005, the trial court entered a subsequent order which held that "[t]he claims of the plaintiffs in this action who are not residents of the State of Mississippi and who do not allege exposure to asbestos in the State of Mississippi . . . are hereby dismissed without prejudice pursuant to the recent decision of the Mississippi Supreme Court." The court found that the lawsuits of 159 of the plaintiffs in the original suit should be dismissed without prejudice. Alexander appeals, assigning four errors to the dismissal without prejudice.

4

**I** **WHETHER THE CIRCUIT COURT IMPROPERLY APPLIED MISS. R. CIV. P. 20 RETROACTIVELY RESULTING IN SEVERANCE AND DISMISSAL OF THE PLAINTIFFS' CLAIMS**

**II.** **WHETHER THE CIRCUIT COURT FAILED TO PROPERLY APPLY THE DOCTRINE OF FORUM NON CONVENIENS OR TO TAKE MEASURES TO PROTECT THE PLAINTIFFS' CASES FROM DISMISSAL**

**III.** **WHETHER THE CIRCUIT COURT VIOLATED THE PLAINTIFFS' RIGHTS UNDER ARTICLE 3 SECTIONS 14 AND 24 OF THE MISSISSIPPI CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.**

**IV.** **WHETHER THE CIRCUIT COURT VIOLATED THE PLAINTIFFS' RIGHTS UNDER THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

¶11. We hold that the trial judge did not err in dismissing without prejudice the out-of-state plaintiffs whose causes of action accrued outside of Mississippi.

## STANDARD OF REVIEW

¶12. In cases regarding joinder and venue, including cases where the severance of plaintiffs is at issue, we review to determine if the trial court abused discretion in its rulings. *Janssen Pharmaceutica, Inc. v. Armond*, 866 So. 2d 1092, 1095 (Miss. 2004).

## DISCUSSION

**I.** **WHETHER THE CIRCUIT COURT IMPROPERLY APPLIED MISS. R. CIV. P. 20 RETROACTIVELY RESULTING IN SEVERANCE AND DISMISSAL OF THE PLAINTIFFS' CLAIMS**

¶13. Alexander argues that this case was properly filed in 2000, and that the amendments to Rule 20 and its comment in 2004 should not be applied retroactively as to affect their case.

5

Alexander also argues that the application of the post-2004 line of cases dealing with venue and joinder, including *Armond*, the various other *Janssen Pharmaceutica* cases, and the *Mangialardi* order should not be applied retroactively.

¶14. However, this is clearly not a forum non conveniens case. Rather, it is simply a Rule 20 joinder issue, which we have already fully addressed in *Albert v. Allied Glove Corp.*, 2006 Miss. LEXIS 661 (Miss. 2006). In *Albert,* this Court mandated that the changes in Rule 20 must be applied to pending cases. *Id.* at *6-7. We made expressly clear that we will continue to recognize the precedent of *Armond* and *Mangialardi* and its application to all pending cases in the State of Mississippi, which held plaintiffs may not be joined under Rule 20 unless their claims are connected by a distinct, litigable event. *Armond*, 866 So. 2d at 1099. Furthermore, this Court has consistently held that the trial judge did not err in dismissing without prejudice the claims of out-of-state plaintiffs whose causes of action accrued outside of Mississippi. *See Albert*, 2006 Miss. LEXIS 661 at *7-9; *Amchem Prods., Inc. v. Rogers*, 912 So. 2d 853, 855 (Miss. 2005); *Dillard's, Inc. v. Scott,* 908 So. 2d 93, 96 (Miss. 2005)*.* Therefore, we find the trial court's ruling to dismiss the plaintiffs' suit without prejudice was correct.

**II. WHETHER THE CIRCUIT COURT FAILED TO PROPERLY APPLY THE DOCTRINE OF FORUM NON CONVENIENS OR TO TAKE MEASURES TO PROTECT THE PLAINTIFFS' CASES FROM DISMISSAL**

¶15. Alexander and the other 158 appellants argue that the trial court failed to ensure that an alternate forum suitable for their claims existed when ordering their case dismissed without prejudice. According to Alexander, the danger is that while the cases were pending

6

in Mississippi, the statute of limitations may have run in a valid alternate jurisdiction. To cure this possible problem, Alexander requested the trial court to require the defendants to waive the statute of limitations for the time period the cases were on file in Mississippi.

¶16. The trial court refused to include such a waiver, preferring to allow the alternate jurisdictions to address issues with savings statutes or other mechanisms that would allow the suits to be refiled. The trial court also based its decision on recent decisions of this Court which clearly mandated dismissal without prejudice as a result of forum non conveniens. S*ee State Farm Mut. Auto. Ins. Co. v. Murriel*, 904 So. 2d 112, 116 (Miss. 2004); *Achem*, 912 So. 2d at 859 ("The out-of-state Plaintiffs with no connection to the State of Mississippi and whose causes of action accrued out of state should be dismissed without prejudice based upon forum non-conveniens"); *Ill. Cent. R.R. v. Gregory*, 912 So. 2d 829, 836-37 (Miss. 2005).

¶17. Alexander and the joint plaintiffs assert that under the doctrine of forum non conveniens, a suitable forum must exist for Alexander to refile his case, and if one does not, the trial court should issue an order requiring defendants to waive any statute of limitation defenses which could be raised in the alternative forums. However, this case does not turn on the doctrine of forum non conveniens. In addressing this same issue in *Albert,* we held that the determination of this joinder issue clearly falls under Rule 20, *Armond, Mangialardi* and the subsequent line of cases recognizing the dismissal of claims made by out-of-state plaintiffs with no connections to Mississippi and whose causes of action accrued outside of the state. *See Albert,* 2006 Miss. LEXIS 661 at *6-7. Accordingly, this argument is without

7

merit. We find that the trial court did not err in dismissing plaintiffs' claims for the reasons discussed above in Issue I.

### III. WHETHER THE CIRCUIT COURT VIOLATED THE PLAINTIFFS' RIGHTS UNDER ARTICLE 3 SECTIONS 14 AND 24 OF THE MISSISSIPPI CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

¶18. Alexander argues that the circuit judge's dismissal violates their due process rights under Article 3, Section 14 of the Constitution of this state as well as the Fourteenth Amendment to the United States Constitution. Alexander argues he was "also deprived due process in the taking of their property interest in their cases without any legitimate state interest," and that "they were not given opportunity to be heard as to the merits of their case, but rather had their claims dismissed in a manner which will prevent them from ever being able to present their claims before any court." However, Alexander does not offer any support for his statement that neither he nor the other 158 joint appellants can ever file a claim in another court. While the suit may have been dismissed without prejudice from a Mississippi court, neither Alexander nor the other 158 joint appellants have shown that they have attempted to file in another jurisdiction and been barred from doing so. Therefore, we simply do not know if there has been a deprivation. Notwithstanding, Alexander received the benefit of three separate hearings before the trial judge regarding the various intricacies of the case: one on October 15, 2004, one on February 7, 2005, and one on March 28, 2005. Even if Alexander demonstrated a deprivation, this was more than sufficient due process. Accordingly, we find no merit to this argument.

8

**IV. WHETHER THE CIRCUIT COURT VIOLATED THE PLAINTIFFS' RIGHTS UNDER THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

¶19. Alexander argues that the dismissal of his lawsuit may violate the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. This argument is based upon the concept that the citizens of other states should have equal access to bring lawsuits in Mississippi, and that by retroactively applying changes in Rule 20, we have deprived these litigants of their right to access to the courts of this state.

¶20. In support thereof Alexander provides only one citation: *Minn. v. Clover Leaf Creamery Co.*, 449 U.S. 456, 470 n.12, 101 S. Ct. 715, 727, 66 L. Ed. 2d 659, 673 (1981). However, it is unclear what this case—involving a state statute regulating the sale of milk in Minnesota—has to do with the present issue, as it involved the Commerce and Due Process components of the Fourteenth Amendment, and the footnote Alexander cites provides no guidance.[1] Alexander has not demonstrated that our refusal to hear claims over which we have no jurisdiction has deprived him of access to a court in another jurisdiction. Nor has Alexander demonstrated any concrete reason why the action should be maintained in Mississippi. Accordingly, there is no constitutional violation.

---

[1] The footnote reads in its entirety: "The District Court also held that the Act violated substantive due process, and was apparently affirmed by the State Supreme Court on this ground. Conclusion of Law No. 1, App. A-23; 289 N. W. 2d, at 87, n. 20. From our conclusion under equal protection, however, it follows a fortiori that the Act does not violate the Fourteenth Amendment's Due Process Clause. *See Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 124-125 (1978); *Ferguson v. Skrupa*, 372 U.S. 726 (1963)."

¶21.   Today's decision is consistent with our recent holdings in *Albert*, 2006 Miss. LEXIS 661 at *17; *Dillard's*, 908 So. 2d at 100; *Amchem*, 912 So. 2d at 859; and *Smith,* 926 So.2d at 846, where this Court directed claims of non-resident plaintiffs with no connection to the State of Mississippi to be dismissed without prejudice.

## CONCLUSION

¶22.   For the reasons stated above, this Court finds that the out-of-state plaintiffs whose causes of action accrued outside of Mississippi should be dismissed without prejudice.  The judgment of the Circuit Court of Jefferson County, Mississippi, is affirmed.

¶23.   **AFFIRMED.**

**WALLER AND COBB, P.JJ., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR.  DIAZ, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, J.  RANDOLPH, J., NOT PARTICIPATING.**

**DIAZ, JUSTICE, DISSENTING:**

¶24.   The recent devastation our state suffered in the wake of Hurricane Katrina illuminates the need for an equitable and efficient judicial system capable of handling hundreds or even thousands of claims should the need arise.  At this moment, our judicial system fails to meet the needs of Mississippians, especially those who may have suffered from this grievous and widespread tragedy.  Because our Court continually fails to correct this problem, I must respectfully dissent from the majority.

¶25.   As my colleague Justice Graves has noted before, Mississippi is the only state in the United States of America which does not have class actions. *Janssen Pharmaceutica, Inc. v. Armond*, 866 So. 2d 1092, 1102 (Miss. 2004) (Graves, J., specially concurring).  In

10

*Armond* we grappled with our Rule 20 which had long allowed a type of "super-joinder." Because we never adopted a class action rule, the only way to aggregate common claims was through joinder. We greatly narrowed the scope of Rule 20 in *Armond*, but declined to adopt a parallel rule, one "that alleviate[d] the great and unnecessary stress we place on Rule 20," and would "create[] a class action procedure that will allow courts to fairly administer claims with numerous parties, protect[] the interests of both defendants and plaintiffs, and avoid[] inconsistent decisions." *Id.* at 1104 (Graves, J., specially concurring).

¶26.    Justice Graves warned that our failure to do so sparked a "true danger" to our judicial system: "the risk of unsettled law--that judges, juries, attorneys, parties, students, and citizens will not understand the procedures and policies of our court system." *Id.* (Graves, J., specially concurring). This pronouncement was borne out almost immediately. It has taken dozens of cases in the past three years to cure the problems Justice Graves foresaw, and we seem no closer to a comprehensive, understandable doctrine. Notable among the many are *Janssen Pharmaceutica, Inc. v. Bailey*, 878 So. 2d 31, 64 (Miss. 2004) (where Justice Easley dissented because "litigants, their lawyers, and the trial courts are left without a clue as to how to proceed in [mass tort] cases," and offered a criticism of the muddy distinction of "mature" and "immature" torts made in *Armond*); *Harold's Auto Parts, Inc. v. Mangialardi*, 889 So. 2d 493 (Miss. 2004) (where, via order, we created a new rule requiring the disclosure of "core information" in aggregated cases); *Purdue Pharma, L.P. v. Estate of Heffner*, 904 So. 2d 100, 104 (Miss. 2004) (where we determined that, even when a district court had found that there was no fraudulent joinder, joinder might still not be proper under the new Rule 20); *MS Life Ins. Co. v. Baker*, 905 So. 2d 1179 (Miss. 2005) (where,

11

less than a year after *Armond*, we were compelled to again provide a review of joinder and the changes to the comment to Rule 20); *3M Co. v. Johnson*, 895 So. 2d 151, 159 (Miss. 2005) (overruling—without acknowledging—the portion of *Armond* referring to "mature torts," by holding that "[a]lthough asbestos litigation is a 'mature tort' as discussed in dicta in *Armond*, this Court does not intend, nor will we proceed to exempt such cases from the requirements of Rule 20"); *Ill. Cent. R.R. v. Gregory*, 912 So. 2d 829 (Miss. 2005) (another massive "review" opinion in the style of *Baker*, this time to attempt to reconcile *Armond* and *Mangialardi*); *Canadian National/Illinois Cent. R.R. v. Smith*, 926 So. 2d 839 (Miss. 2006) (clarifying what a trial court is required to do in order to dispose of misjoined claims); and lastly, *Albert v. Allied Glove Corp.*, __ So. 2d. __, 2006 Miss. LEXIS 661 (Miss. Nov. 30, 2006) (refusing to apply forum non conveniens doctrine to misjoined claims in order to preserve statutes of limitation and prevent injustice). The doctrine of joinder has proved suspectible to multiple changes or modifications in one single calendar year, with no end in sight.

¶27. In the most recent line of cases—*Albert*, *Coleman*, and the case at hand—the interests of litigants and judicial economy are disregarded. We callously announce that, even if a case was filed validly pre-*Armond*, it is susceptible to a dismissal which might result in a time-barred claim. Basically, we are indifferent to what happens to litigants, their claims, or the immense time and money costs that will be involved in refiling, not to mention the hundreds of other courts which will have to grapple with our failure to craft a concrete, discrete, and understandable rule.

12

¶28. Fairness and justice were not the ultimate outcomes of *Armond*: instead, it was the total elimination of any aggregated claims. Despite all our vehement protests to the contrary, there is no such thing as a "distinct litigable event" in Mississippi.[2] Our court has grappled constantly with joinder since *Armond*, which failed utterly to erase confusion regarding aggregate claims. As I wrote in my dissent in a companion case to the one at hand, "[j]oinder was broken pre-*Armond*, and it remains broken today, a tangled web of clashing precedent and theory." *Coleman v. A-Bex Corp.*, __ So. 2d __, 2006 Miss. LEXIS 658 (Miss. Nov. 30, 2006) (Diaz., J., dissenting).

¶29. Yet after *Armond*, there seemed for many months to be a positive force towards reform of our rules, as many members of our bench and bar threw themselves into seeking innovative and flexible solutions for the grouping of mass claims. This great effort sparked lively and scholarly public debate, with many highlights replicated in a full volume of the *Mississippi College Law Review*. But at some point we as a Court stopped looking for ways to improve the current state of the judicial system, content to tinker endlessly with Rule 20. And as Justice Graves wrote almost three years ago, "[t]here are multiple ways we could approach this problem, but we do not solve it when we refuse to address it." *Armond*, 866 So. 2d at 1103 (Graves, J., specially concurring). Indeed, we have eliminated even the

---

[2]As an aside, *3M v. Johnson* examined the peculiar term "distinct litigable event," which we slid into the comment to Rule 20 post-*Armond*. There are only 21 reported and unreported cases which utilize that odd term, all of which are either situated in Mississippi state or federal courts, citing to the comment to Rule 20. This method of determining joinder is wholly unique to Mississippi and it, along with the phrase which describes it, appears to have no basis in prior Mississippi law nor any other federal or state precedent examining joinder.

limited forms of class action that were once possible in our courts of equity. *Id.* (Graves, J., specially concurring).

¶30.    In the midst of our doldrums came Katrina.

¶31.    The storm's impact was numbing:  200,000 homes along the Gulf Coast were destroyed, displacing thousands of Mississippi families.  Of our nearly three million Mississippi residents, 909,200 were without power the day after the storm.  Ultimately, 47 counties were declared disaster areas and billions of dollars in damage were suffered.  Yet all those billions paled to the losses suffered by the families and friends of the 231 Mississippians who died because of the storm.

¶32.    After the tragedy came a tremendous struggle to cope.  Homes were opened to strangers.  Those who had lost power emptied their freezers, concocting feasts for neighbors, family, and friends.  Mississippians came together in a time of desperate need, and we were blessed to receive help from all across America.

¶33.    Then, homeowner after homeowner had insurance claims rejected.  We all struggled to understand the scientific and contractual subtleties of "wind versus water."  And lawsuits began.

¶34.    The overwhelming majority of these suits are situated in the federal court system, and many seek to establish large classes of plaintiffs pursuant to Fed. R. Civ. P. 23.  When Mississippians were harmed, they petitioned for redress, but were only able to do so in the federal judicial system.  This is a matter of grave concerns for at least two reasons–both of which are constitutional rights guaranteed to all Mississippians.

14

¶35. Our Mississippi Bill of Rights ensures that "[a]ll courts shall be open; and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or delay." Miss. Const. art. 3, § 24. This right is underscored and supported by Section 25, which demands that "[n]o person shall be debarred from prosecuting or defending any civil cause for or against him or herself, before any tribunal in the state, by him or herself, or counsel, or both." Miss. Const. art. 3, § 25.

¶36. At this moment in time we would allow a citizen harmed by Katrina to file suit in our state courts, but only if they filed alone. Common sense dictates that the costs of complex lawsuits are borne easier by the aggregation of claims; this also reduces the burden of multiple identical lawsuits pending in parallel courts and erases the dangers of inconsistent judgments. Yet we implicitly prohibit this aggregation, and accordingly, we foreclose Mississippians access to the court system which is their right.

¶37. We have within our power the ability to change the judicial system to better serve the interests of justice and the needs of our citizenry. In the past few years, we have made tremendous strides in modernizing our system of rules, moving from *Frye* to *Daubert* and adopting Miss. R. Civ. P. 35, which allows the mental and physical examination of parties when it is pertinent to their lawsuit. Our efforts at making the legal system more accessible—through the adoption of mandatory reporting of pro bono hours in Miss. R. Prof'l Cond. 6.1 and the creation of our access to justice commission–will have have a magnificent impact on our state, and reflect upon our true desire to uphold justice.

¶38.   Yet we can do more, and indeed, we must do more.  The most telling fact is this:  "[i]n 1833, just a little over a decade after Mississippi was admitted to the Union, 'the first provision for group litigation in federal courts was set forth as Equity Rule 48.'" ***Armond***, 866 So. 2d at 1103 (Graves, J., specially concurring) (citing Deborah Hensler, Nicholas Pace, Bonita Dombey-Moore, Beth Giddens, Jennifer Gross, & Erik Moller, *Class Action Dilemmas* 10 (2000)).  One hundred and seventy-three years later, Mississippi has no provision for group litigation, even though the United States employed one in the nineteenth century.  This must change, because we need one to fully serve the interests of justice.

¶39.   Because we no longer provide open access to our state judicial system as is mandated by our constitution, for the reasons above, and for the reasons I previously stated in dissenting from ***Albert*** and ***Coleman***, I must respectfully dissent.

   **GRAVES, J., JOINS THIS OPINION.**